THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| BENJAMIN DRESNER, Individually and On Behalf of All Others Similarly Situated, | Case No. 2:21-cv-1499-MJP |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| SILVERBACK THERAPEUTICS, INC., LAURA K. SHAWVER, JONATHAN PIAZZA, RUSS HAWKINSON, PETER THOMPSON, VICKIE L. CAPPS, ROBERT HERSHBERG, SAQIB ISLAM, ANDREW POWELL, JONATHAN ROOT, THILO SCHROEDER, and SCOTT PLATSHON, | NOTE ON MOTION CALENDAR: AUGUST 10, 2022 |
| Defendants. | |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                    - i
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................................... 3

III.  ARGUMENT ................................................................................................................ 10

      A.    Legal Standard ................................................................................................. 10

      B.    The Complaint Adequately Alleges Falsity as to the Securities Act Defendants'
            Misstatements Regarding SBT6050 .................................................................. 12

      C.    The Complaint Adequately Alleges Falsity as to the Exchange Act Defendants'
            Misstatements Regarding SBT6050 .................................................................. 14

      D.    The Falsity Allegations Satisfy Pleading Requirements ..................................... 20

      E.    The Complaint Adequately Pleads the Exchange Act Defendants' Scienter ....... 21

            1.    Defendants' Access to Data Contributes to the Inference of Scienter ...... 21

            2.    The Core Operations Doctrine Contributes to the Inference of Scienter .. 22

            3.    Signatures, Quotes, and SOX Certifications Contribute to the Inference of
                  Scienter ................................................................................................... 23

      F.    The Complaint Adequately Pleads Loss Causation ............................................ 23

      G.    The Complaint Adequately Pleads §§ 15 and 20(a) Claims ............................... 24

IV.   CONCLUSION ............................................................................................................. 24

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - ii
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ................................................................................13, 15

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
  2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) ...........................................................12, 14, 20

*City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.*,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011).........................................................................11

*Constr. Workers Pension Tr. Funn – Lake Cnty. v. Genoptix, Inc.*,
  2013 WL 12123841 (S.D. Cal. Mar. 22, 2013) ...........................................................24

*Curry v. Hansen Med., Inc.*,
  2011 WL 3741238 (N.D. Cal. Aug. 25, 2011) .............................................................25

*Derr v. Ra Med. Sys., Inc.*,
  2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) .............................................................12

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005).........................................................................................24

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .............................................................................25

*Flynn v. Sientra, Inc.*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016) ...............................................................18, 23

*Gebhart v. S.E.C.*,
  595 F.3d 1034 (9th Cir. 2010) .............................................................................21

*Herman & MacLean v. Huddleston*,
  459 U.S. 375 (1983).........................................................................................11

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ..............................................................................10

*In re Acadia Pharm. Inc. Sec. Litig.*,
  2020 WL 2838686 (S.D. Cal. June 1, 2020)................................................................21

*In re Amgen Inc. Sec. Litig.*,
  2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)..............................................................18, 21, 22, 23

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - iii
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*In re Gilead Scis. Sec Litig.*,
 536 F.3d 1049 (9th Cir. 2008) ...................................................................................10

*In re Immune Response Sec. Litig.*,
 375 F. Supp. 2d 983 (S.D. Cal. 2005)........................................................................13

*In re Loudeye Corp. Sec. Litig.*,
 2007 WL 2404626 (W.D. Wash. Aug. 17, 2007)........................................................21

*In re NVIDIA Corp. Sec. Litig.*,
 768 F.3d 1046 (9th Cir. 2014) ...................................................................................13

*In re Quality Sys., Inc. Sec. Litig.*,
 865 F.3d 1130 (9th Cir. 2017) ...................................................................................14

*In re Snap Inc. Sec. Litig.*,
 2018 WL 2972528 (C.D. Cal. June 7, 2018) .......................................................11, 18

*In re Wachovia Equity Sec. Litig.*,
 753 F. Supp. 2d 326 (S.D.N.Y. 2011).........................................................................12

*In re Zillow Grp., Inc. Sec. Litig.*,
 2019 WL 175593 (W.D. Wash. Apr. 19, 2019)...........................................................10

*Jiangchen v. Rentech, Inc.*,
 2017  WL 10363990 (C.D. Cal. Nov. 20, 2017)..........................................................20

*Kendall v. Odonate Therapeutics, Inc.*,
 2021 WL 3406271 (S.D. Cal. Aug. 4, 2021) ...............................................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018), *cert. denied sub nom. Hagan v. Khoja*, 139 S.
 Ct. 2615 (2019) ..........................................................................................................10

*Knollenberg v. Harmonic, Inc.*,
 152 F. App' x 674 (9th Cir. 2005). .............................................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011)......................................................................................................10

*Mauss v. Nuvasive, Inc.*,
 2014 WL 4161431 (S.D. Cal. Aug. 19, 2014) .............................................................21

*Mulligan v. Impax Lab'ys, Inc.*,
 36 F. Supp. 3d 942 (N.D. Cal. 2014) ..........................................................................14

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - iv
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ..................................................................................23

*Okla. Firefighters Pension & Ret. Sys. v. Nektar Therapeutics (In re Nektar Therapeutics Sec. Litig.)*,
34 F.4th 828 (U.S. 9th Cir. 2022) .......................................................................18, 19

*Pirani v. Slack Techs., Inc.*,
445 F. Supp. 3d 367 (N.D. Cal. Apr. 21, 2020) ......................................................18

*Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017).....................................................................11

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) .................................................................................11

*Schueneman v. Arena Pharms., Inc.*,
840 F.3d 698 (9th Cir. 2016) ...................................................................................14

*Slomnitsky v. Caldwell (In re Allied Nev. Gold Corp. Sec. Litig.)*,
743 F. App'x 887 (9th Cir. 2018)...........................................................................19

*Sparling v. Daou (In re Daou Sys.)*,
411 F.3d 1006 (9th Cir. 2005) .................................................................................22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)....................................................................................10, 21, 22

*Todd v. Tempur-Sealy Int'l, Inc.*,
2016 WL 5746364 (N.D. Cal. Sep. 30, 2016) .......................................................20

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009).....................................12

**Statutes**

17 C.F.R. §240.10b-5..................................................................................................24

15 U.S.C. §77k...................................................................................................... *passim*

15 U.S.C. §77o............................................................................................................24

15 U.S.C. §78j(b) .................................................................................................. *passim*

15 U.S.C. § 78t(a) ......................................................................................................24

15 U.S.C. §78u-4(b)(1) ..............................................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                          - v
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Sarbanes-Oxley Act of 2002 ................................................................................................7

**Rules**

Fed. R. Civ. P. 8(a) ...............................................................................................3, 11, 23

Fed. R. Civ. P. 9(b) .......................................................................................................11, 12

Fed. R. Civ. P. 12(b)(6)...................................................................................................10

Fed. R. Civ. P. 12(f)........................................................................................................20

Fed. R. Civ. P. 15(a)(2)...................................................................................................25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - vi
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## I.   PRELIMINARY STATEMENT[1]

Silverback Therapeutics, Inc. ("Silverback" or the "Company") is a "no trick pony," with no earnings, that had *one* trick up its sleeve when it began trading on the NASDAQ.  That one trick, an antibody drug conjugate called SBT6050, was designed to target and activate immune cells within certain types of tumors that express a particular protein called HER2, and to thereby promote localized tumor killing by those immune cells without impacting non-targeted cells. Purportedly on the road to seeking FDA approval to market SBT6050, the Company began an open label Phase 1/1b clinical trial in July 2020, five months prior to its initial public offering ("IPO"), to evaluate SBT6050's safety and anti-tumor activity (*i.e.,* efficacy).  In the Offering Documents Defendants filed to effectuate the IPO, and continuing in filings throughout the Class Period, Defendants told investors that they had "observed changes in pharmacodynamic markers," observations they explained "have been associated with tumor regression."  In reality, Defendants' ongoing contemporaneous evaluation of the trial data revealed limited anti-tumor activity.  Indeed, *seventeen out of forty patients* treated with SBT6050 discontinued study treatment due to disease progression and *ten others* that remained enrolled in the trial also showed disease progression.

Defendants also opted to speak about the trial's safety data, touting the absence of dose limiting toxicities and only minor ailments as the most common adverse events, without revealing that in fact, the drug did not have a manageable safety profile due to "cytokine-related[2]" adverse events.  The Complaint further alleges that Defendants misled investors by describing another drug in its arsenal, SBT6290, which it touted as expanding on the same mechanism SBT6050 used to activate immune cells, but never mentioning that if the trial data for SBT6050 reflected limited

---

[1] All "¶ __" references are to the Amended Class Action Complaint ("Complaint"), filed April 11, 2022, Doc. No. 29.
[2] Cytokine-release syndrome is a potentially life-threatening systemic inflammatory reaction which is observed after infusion of agents targeting different immune effectors.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                - 1
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

efficacy or adverse safety, that would doom not only SBT6050 but SBT6290 as well.

After presenting interim trial data at the European Society for Medical Oncology ("ESMO") 2021 Congress in September 2021, which showed only one patient with a reduction in tumor size and three with stable disease, and as late as November 2021, Defendants continued to maintain that SBT6050 conferred "*clinical benefit*" and had a "*manageable safety profile*." A few months later, Defendants discontinued both the SBT6050 and SBT6290 programs admitting the SBT6050 trial data showed *limited anti-tumor activity* and an *unmanageable safety profile*. These allegations suffice to establish the falsity of the Exchange Act Defendants' statements under § 10(b) and strict liability for the Securities Act Defendants' statements under § 11.[3]

Defendants' Motion[4] seeks to recast this case as the simple tale of a drug failing to live up to its potential. The truth is not so innocuous. The Complaint alleges that Defendants issued statements creating the false impression that its *only drug in active development* exhibited signs of efficacy and safety, representations so far from the truth that Silverback ultimately had to discontinue the SBT6050 program (and SBT6290 program) because the drug *lacked sufficient efficacy and safety*. Faced with these damning indisputable allegations, Defendants ask the Court to assume that they based their decision to discontinue their top two drug candidates "upon consideration of additional data from their studies," though not a single fact in the record, nor in any of the seventeen exhibits Defendants appended to their Motion, supports that contention. The Court cannot simply "take their word for it" and dismiss the Complaint on that unfounded self-serving basis. The *facts* before this Court tell a very different story. The Exchange Act Defendants tracked the open label SBT6050 trial data for anti-tumor activity and safety (as they stated they

---

[3] "Exchange Act Defendants" and "Securities Act Defendants" are defined in the Complaint, ¶¶ 21, 23, 33,35.
[4] "Motion" or "Mot." refers to Defendants' Motion to Dismiss Amended Class Action Complaint, Doc. No. 34.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                        - 2
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

would, and because SBT6050 was their lead drug candidate and core operation), had access to that data contemporaneously, held biweekly meetings with mandatory "all hands on deck" attendance to discuss that data, and thus had access to data showing limited anti-tumor activity, a high percentage of patient discontinuations due to disease progression, and troubling safety signals. These allegations establish a compelling inference of scienter under § 10(b). Moreover, when investors learned of the troubling trial data and the Company's decision to discontinue both SBT6050 and SBT6290, which revealed the misleading nature of Defendants' statements regarding SBT6050's efficacy, clinical benefit, anti-tumor activity, competitive advantage/addressable market, safety, and SBT6290, Silverback's share price plummeted. These allegations satisfy the Rule 8(a)(2) minimal pleading standard for loss causation under § 10(b).

Bereft of any credible challenge to either the particularized allegations underpinning the elements of the § 10(b) claim or the strict liability § 11 claim, Defendants' Motion must fail.

## II.    STATEMENT OF FACTS

Silverback, a clinical-stage biopharmaceutical company that has never earned revenue and has no approved marketable drugs, develops tissue-targeted therapeutics to treat cancer, chronic viral infections, and other serious diseases. ¶ 2. The Company has incurred significant operating losses since inception, with its net losses tripling from 2020-2021. ¶ 37. The Company's lead product candidate during the Class Period was SBT6050, which it touted as a treatment to target HER-2 expressing tumors, such as breast, gastric, and non-small cell lung cancers. ¶ 38. SBT6050 is an Antibody-Drug Conjugate ("ADC").  ADCs consist of a payload, which is a small molecule drug, and an antibody that is engineered against an antigen, like a tumor-specific antigen, on the target cell surface. *Id.* The payload and the antibody are joined by a chemical linker. *Id.* When the ADC binds to the target antigen, the payload is released and exerts its effect in the targeted cell, ideally minimizing the effect on non-targeted cells that don't have the antigen of interest. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                     - 3
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

For SBT6050, the payload is called a TLR8 agonist, which is linked to a HER2-directed antibody. ¶ 39.  It is designed to activate myeloid cells that exert an immune response to treat targets.  Myeloid cells play major roles in innate immunity and can comprise between 5-10% of a tumor. *Id.* Activating those cells "results in direct tumor killing and recruitment of immune cells." *Id.* Figuring out optimal dosing is key because the payload is cytotoxic, or toxic to living cells, so a small increase in systemic exposure of the payload can cause significant adverse reactions. *Id.*

**Clinical Testing of SBT6050:** Defendants initiated a Phase 1/1b clinical trial in July 2020 to evaluate the safety and efficacy of SBT6050, both used alone as a monotherapy and in combination with pembrolizumab, a PD-1 inhibitor (a type of immunotherapy that stimulates the body's immune system to fight cancer cells). ¶ 40. Regarding efficacy, the Company explained that the trial would evaluate biomarkers of immune cell activation and anti-tumor activity. ¶ 42. Throughout the trial, patients received CT scans every eight weeks until week twenty-four and then every sixteen weeks thereafter. ¶ 44. The trial was *open label*, meaning Defendants had contemporaneous access to the trial data throughout. *Id.*  Indeed, according to Confidential Witness ("CW") 1, who worked for Silverback from April 2018 until August 2021 as a senior research scientist and then an associate scientist, CEO Defendant Shawver held biweekly company-wide meetings with *mandatory* attendance for *all employees* to report on and discuss trial data. *Id.* Teams, including, *inter alia,* the in-house clinical lab team and employees sharing data gathered from external clinical testing sites presented information on the progress of the SBT6050 trials. *Id.*

**Materially False and Misleading Statements in the Offering Documents**: The Securities Act Defendants repeatedly represented in the Offering Documents, issued five months into the SBT6050 Phase 1/1b trial, that they had already "observed changes in pharmacodynamic markers in the first dose cohort," *i.e.*, a sign of efficacy. ¶¶ 47, 49, 50. In the same document,

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Defendants explained the significance of such an observation--- that such changes "*have been associated with tumor regression*." Defendants also touted SBT6050's safety advantage over *untargeted* (whereas SBT6050 is targeted) TLR8 small molecule therapeutic candidates from other companies which "have resulted in an adverse event profile that we believe has limited achieving a dose level sufficient to produce the desired therapeutic benefit." ¶ 48.  Specifically, Defendants represented that patients who received a 0.3 mg/kg dose of SBT6050 had "no DLTs ["dose limiting toxicities"]" and that "the most common adverse events are flu-like symptoms and redness and swelling at the injection site." ¶ 49. Moreover, touting SBT6050's larger addressable market and competitive advantage over FDA approved HER2 *targeted* therapies, Defendants stated that SBT6050 is not limited to treating "subsets of breast and gastric cancer" and was intended for use in combination with approved standard of care treatments (like pembrolizumab). ¶¶ 50, 52.

The Offering Documents further touted the Company's second drug candidate, SBT6290, which Defendants described as "expanding on the potential of a TLR8 agonist as a payload," comprehensively illustrated how the drug works, and stated that the Company planned to submit "an investigational new drug application (IND) for SBT6290 in the fourth quarter of 2021." *See* Weinrib Decl., Ex. C, pgs. 1-3; Def. Exs. A-C.

The foregoing representations in the negligently prepared Offering Documents misstated and failed to disclose that SBT6050 showed limited anti-tumor activity in the six patients already treated with SBT6050 and that a showing of limited anti-tumor activity or dose-limiting toxicities would not only force Defendants to discontinue developing SBT6050 but SBT6290 as well.

**Materially False and Misleading Statements Issued During the Class Period**: The Exchange Act Defendants also issued misleading statements in the Company's Class Period 10-K, 10-Qs, and press releases, representing that SBT6050 showed signs of efficacy.  For example,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                      - 5
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

the Exchange Act Defendants stated in the Company's 2020 10-K that, while "examining the anti-tumor activity of SBT6050 in patients that have failed all available therapies associated with clinical benefit, in addition to measuring biomarkers of immune cell activation," they "observed changes in pharmacodynamic markers" "consistent with the potential mechanism of action" in all enrolled patients treated with SBT6050, noting one patient with "stable disease" and one patient with "a greater than 30% reduction in the diameter of her target lesion." ¶¶ 55, 56, 57, 60. Defendants identified efficacy as a "key competitive factor affecting the success of all of our programs." ¶ 59. The Exchange Act Defendants also reported on safety, noting the lack of dose limiting toxicities, and claiming the "most common adverse events included flu-like symptoms (fever, chills, nausea, vomiting, fatigue) and redness and swelling at the injection site." ¶ 60.

Moreover, Defendants touted SBT6050's addressable market and competitive advantage over alternative FDA approved HER2 targeted therapies, stating that "SBT6050 does not require HER2 to be an oncogenic driver to elicit anti-tumor activity" and can be used along with "standard of care therapies in some HER2-expressing cancers." ¶ 56 Defendants further stated that unlike FDA approved targeted therapies that require the tumor cells to be dependent on HER2 signaling, and that are thus only able to treat subsets of breast and gastric cancer, "SBT6050 does not require the tumor cells to be dependent on HER2 signaling for its anti-tumor activity and instead utilizes the HER2 protein to deliver the conjugate to adjacent myeloid cells," thus "expand[ing] the market opportunity beyond HER2-driving breast and gastric cancer..." ¶ 58.

Defendants additionally touted Silverback's second drug candidate, SBT6290, which they described as "expanding on the potential of a TLR8 agonist as a payload," comprehensively illustrated how the drug works, and stated that the Company planned to submit "an investigational new drug application (IND) for SBT6290 in the fourth quarter of 2021." Appended to the 2020

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                              - 6
(Case No. 2:21-cv-1499-MJP)

10-K was a Sarbanes-Oxley Act of 2002 certification signed by Defendants Shawver and Piazza, attesting that, "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company." ¶ 61.

Defendants repeated their representations regarding observed "pharmacological activity" and "changes in pharmacodynamic markers," representations regarding safety, representations regarding SBT6050's advantage over alternative therapies, and representations regarding SBT6290, in press releases and quarterly filings throughout the Class Period. ¶¶ 62, 65, 67.

The Exchange Act Defendants' statements were false and misleading because (i) SBT6050 showed limited anti-tumor activity in patients treated with only SBT6050; (ii) an overwhelming percentage of trial participants withdrew from the trial due to disease progression; (iii) SBT6050 did not have a manageable safety profile; (iv) the Company would therefore have to discontinue the clinical program for SBT6050; (v) the Company would also have to discontinue the clinical program for SBT6290 due to the fact that it would have a similar clinical profile as SBT6050; and (vi) accordingly, the Company had overstated SBT6050's commercial and/or clinical prospects.

**The Truth Begins to Emerge:** On September 13, 2021, Silverback issued a press release announcing that it would present interim data from the trial evaluating SBT6050 as a monotherapy and in combination with pembrolizumab at the ESMO 2021 Congress from September 16-21, 2021" and advising that "[t]he accepted abstract . . . is now available on the ESMO website" ("Abstract"). ¶ 69. ***The Abstract had a data cutoff date of <u>April 4, 2021</u>.*** ¶ 70. The Abstract stated that among 14 evaluable patients for tumor types of interest (out of 18 treated), one patient had a partial response to the treatment with a 55% reduction in tumor size, three patients showed stable disease, and ten showed disease progression. ¶¶ 69-70. However, Defendants continued to maintain in the September 16 presentation expanding on the Abstract that the clinical trial data

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - 7
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

showed pharmacological activity "as demonstrated by the induction of blood-based biomarkers associated with myeloid cell and NK or T cell activation," SBT6050 "conferred clinical benefit to patients with heavily pre-treated, advanced solid tumors," showed early signals of anti-tumor activity as a monotherapy and in combination with a PD-1 inhibitor," and claimed SBT6050 had a "manageable safety profile." *Id.* Silverback stock dropped $4.54 per share, or 23.35%, to close at $14.90 on September 13, 2021, and fell 23% on September 16, 2021, to close at $12.50. ¶ 71.

Plaintiffs consulted a pharmaceutical expert, Todd Clark[5], who confirmed that Defendants had no credible basis for stating in September 2021 that "SBT6050 conferred clinical benefit to patients with heavily pre-treated, advanced solid tumors." ¶ 46. First and foremost, because most patients did not experience any apparent benefit. *Id.* Indeed, of twenty-four patients with evaluable CT scans, fifteen showed progressive disease, eight had stable disease, and only one experienced an improvement in the form of a partial tumor response. *Id.* Four of the eight with stable disease were also treated with pembrolizumab, a highly successful FDA-approved cancer agent. *Id.* In addition, seventeen patients treated during the trial withdrew due to disease progression. *Id.* The Company, which had been tracking data as the open-label trial progressed, should have known that treatment with SBT6050 alone showed limited anti-tumor activity, thereby providing a sufficient basis for discontinuing the trial for SBT6050 as a monotherapy. *Id.* Second, because the trial lacked a control arm, it is not possible to measure SBT6050 performance *relative* to other treatments. *Id.* Thus, Silverback lacked a reasonable basis for concluding that, if there was any clinical benefit, that it was "conferred" by SBT6050, as opposed to pembrolizumab. *Id.*

Less than two months after ESMO, on November 10, 2021, the Company filed its 10-Q for the third quarter 2021, wherein Defendants continued to mislead investors and maintain that they

---

[5] Mr. Clark's extensive credentials are set forth in the Complaint, ¶ 46.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                    - 8
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

"observed induction of pharmacodynamic biomarkers" and that the interim trial data demonstrated ***"proof-of-mechanism through SBT6050's ability to activate myeloid, T and NK cells, as well as evidence of SBT6050 payload localization in the tumor microenvironment, observed adverse events consistent with on-mechanism immune activation, and early signals of anti-tumor activity***." ¶ 72. While the 10-Q discussed dose limiting toxicities in patients treated with 0.3 mg/kg of SBT6050 in combination with pembrolizumab, Defendants assured investors that "these adverse events resolved with supportive care." *Id.* The 10-Q also described SBT6290, touting that it "expands on the potential of a TLR8 agonist as a payload." ¶ 73. These statements continued to mislead investors because while providing assurances of clinical benefit and safety, Defendants failed to reveal that: (i) SBT6050 showed limited anti-tumor activity; (ii) an overwhelming percentage of trial participants withdrew from the trial due to disease progression; (iii) SBT6050 did not have a manageable safety profile; (iv) the Company would therefore have to discontinue the SBT6050 clinical program; (v) the Company would also have to discontinue the clinical program for SBT6290 due to the fact that it would have a similar clinical profile; and (vi) accordingly, the Company had overstated SBT6050's commercial and/or clinical prospects.

Investors finally learned the truth on March 31, 2022, when Silverback reported fourth quarter results for 2021 and announced it had discontinued its SBT6050 program based on limited monotherapy anti-tumor activity and cytokine-related adverse events that limited the dose in combination with pembrolizumab. ¶ 75. Based on the SBT6050 data, the Company announced that it would also discontinue its SBT6290 program due to the likelihood of it having a similar clinical profile to SBT6050. *Id.* Silverback further revealed that, as a result of these discontinued programs, it had to cut its workforce by 27% to extend its cash runway to develop another drug in its pipeline. *Id.* On this news, Silverback's stock dropped 8.55% to close at $3.20. ¶ 76.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                    - 9
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## III. ARGUMENT

### A. Legal Standard

Plaintiffs "need only allege enough facts to state a claim to relief that is plausible on its face.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011).[6] "[S]o long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings." *In re Gilead Scis. Sec Litig.*, 536 F.3d 1049, 1057 (9th Cir. 2008); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019) (dismissal pursuant to Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable theory or sufficient facts to support a cognizable theory"). In applying this standard, courts must accept as true all well-pled factual allegations, draw all reasonable inferences in plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322-23 (2007).

To state a claim under Section 10(b) of the Exchange Act (15 U.S.C. §78j(b)), Plaintiffs must plead: (1) a material misstatement or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *In re Zillow Grp., Inc. Sec. Litig.*, 2019 WL 175593 at *2 (W.D. Wash. Apr. 19, 2019); *Khoja*, 899 F.3d at 1008 n.36.

Section 11, on the other hand, "'places a relatively minimal burden on a plaintiff,'" *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013) (quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)), requiring only that "any part of the registration statement . . . contain[] an untrue statement of a material fact or omitted to state a material fact required to

---

[6] All citations are omitted, and emphasis is added, unless otherwise noted.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                         - 10
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. §77k(a). Issuers can therefore be liable for what the registration statement says as well as what it leaves out. *See In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at \*8 (C.D. Cal. June 7, 2018) ("*Snap I*"). ***Liability "is virtually absolute, even for innocent misstatements." Herman & MacLean***, 459 U.S. at 382. Section 11 does not require proof of scienter, reliance, or loss causation.  *See Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).

Plaintiffs' Section 11 claim does not "sound in fraud" and is, therefore, subject to the permissive notice pleading standards of Rule 8(a).  *See Knollenberg v. Harmonic, Inc.*, 152 F. App' x 674, 683-84 (9th Cir. 2005) (finding that Rule 9(b) did not apply where "claims [were] not 'grounded in fraud' because Plaintiffs allege[d] a basis for Section 11 liability other than fraud; *i.e.*, the omission of a material fact from the Registration Statement.").  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Plaintiffs have alleged non-fraudulent bases for Section 11 liability, including the simple fact that the Securities Act Defendants negligently signed the Offering Documents which contained untrue facts and material omissions. ¶¶ 24-32, 34-35, 88-96.

The Complaint is also segregated into two parts, with distinct sections for the Exchange Act claims and the Securities Act claims. The Complaint expressly disclaims that its Securities Act claims are based in fraud. ¶¶ 88, 97. Indeed, the Counts that set forth the Securities Act claims, explicitly exclude the paragraphs related to the Exchange Act claims. ¶¶ 88, 97. *See Fresno Cty. Emps.' Ret. Ass'n v. comScore, Inc*., 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017).[7]

---

[7] *See also City of Roseville Emps' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 425 (S.D.N.Y. 2011) (finding Securities Act claims must only satisfy the Rule 8 pleading standards when the Complaint makes it "easy to distinguish between the two [theories], and the substance of the allegations keeps the distinction as clear as does the complaint's structure."); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326 (S.D.N.Y. 2011).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                          - 11
(Case No. 2:21-cv-1499-MJP)

Regardless, the Complaint meets even Rule 9(b)'s higher pleading standard as Plaintiffs "specify each statement alleged to have been misleading, the…reasons why…, and if an allegation…is made on information and belief, … all facts on which that belief is formed.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-991 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (quoting 15 U.S.C. §78u-4(b)(1)).

**B.    The Complaint Adequately Alleges Falsity as to the Securities Act Defendants' Misstatements Regarding SBT6050**

At the time the Securities Act Defendants filed the Offering Documents, the Phase 1/1b SBT6050 trial had been ongoing for five months.  The six patients that had already received 0.3 mg/kg of SBT6050 in Part 1 of the trial, received a median of 3.5 doses 14 days apart. *See* Weinrib Decl., Ex. A, slide 11; Ex. B, pg. 23; Ex. C, pg. 129.  The trial was open label (not blinded), so Defendants had access to trial data in real time starting day one.  The Offering Documents made clear that the Company focused, *inter alia*, on anti-tumor activity and measuring biomarkers of immune cell activation in patients treated with SBT6050—signs that the drug is efficacious.  With that backdrop, the Offering Documents stated that, "[c]hanges in pharmacodynamic markers consistent with the potential mechanism of action have been observed in treated patients," but gave no indication that, despite this, they had observed limited anti-tumor activity. *See Bos. Ret. Sys. v. Uber Techs., Inc.*, 2020 WL 4569846, at \*8 (N.D. Cal. Aug. 7, 2020) (holding a complaint did not engage in "impermissible hindsight pleading" when "defendants' statements were misleading given the information available to them at the time the statements were made").

Whether Defendants had indeed observed changes in pharmacodynamic markers (Mot. at 12) is beside the point. *See Derr v. Ra Med. Sys., Inc.*, 2021 WL 1117309, at \*6 (S.D. Cal. Mar. 24, 2021) (holding that while two "sets of statements may have been technically true. . . both would mislead a reasonable investor").  Even if a statement is not literally false, it can still mislead if it

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                             - 12
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

omits material information or "would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1054 (9th Cir. 2014); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008). Defendants' statements (whether made innocently or negligently-- all that § 11 requires), did not also reveal that they had observed limited anti-tumor activity, a significant omission given that the Offering Documents made clear that changes in pharmacodynamic markers "***have been associated with tumor regression***." Defendants thus gave investors the false impression that they had observed promising signs of efficacy. *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019 (S.D. Cal. 2005) (finding falsity where, "Plaintiffs' criticism is not that what was said was inaccurate, but that it was incomplete, thus portraying the results of the clinical trial in an unduly optimistic light" and "[w]hether Defendants' statements were accurate is not an issue at this stage"). This could not have been further from the truth. Indeed, ultimately, ***all six of the patients*** referenced in the Offering Documents, treated at the 0.3 mg/kg dose level with SBT6050 as a monotherapy, discontinued study treatment ***due to disease progression***. *See* Weinrib Decl., Ex. A, slide 11. Defendants never disclosed the large percentage of trial patients that discontinued the trial due to disease progression. The Offering Documents therefore also misstated that the addressable market and competitive advantage for SBT6050 far surpassed alternative FDA approved HER2 targeted therapies. Limited anti-tumor activity in patients treated with SBT6050 meant no competitive advantage and no addressable market at all.

Further, the Securities Act Defendants spoke in detail of Silverback's second drug candidate, SBT6290, describing how it works[8], touting it as an "expan[sion] on the potential of a

---

[8] Factual statements that SBT6050 caused pharmacological activity and describing SBT6290 are not the sort of vague statements courts consider puffery. Def. Ex. 2. Courts "exercise great caution" in finding statements to be inactionable puffery. *See Mulligan v. Impax Lab'ys, Inc.*, 36 F. Supp. 3d 942, 966-67 (N.D. Cal. 2014); *In re Quality Sys., Inc.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                   - 13
(Case No. 2:21-cv-1499-MJP)

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

TLR8 agonist as a payload," and setting a timeline to file an IND, without mentioning they could not develop SBT6290 if SBT6050's trial data reflected a lack of efficacy and/or safety, given that both drugs used a TLR8 agonist as a payload.  Once Defendants chose to speak comprehensively about SBT6290, they had a duty to disclose this material information so as not mislead investors. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-706 (9th Cir. 2016) (once a company speaks it is "bound to do so in a manner that wouldn't mislead investors"); *Uber Techs., Inc.*, 2020 WL 4569846 at *7 ("[T]he information defendants *did* disclose created an impression of a state of affairs that differed in a material way from the one that actually exist[ed]."). Defendants should have disclosed that a failure for SBT6050 meant the demise of *both* drug candidates.

### C.   The Complaint Adequately Alleges Falsity as to the Exchange Act Defendants' Misstatements Regarding SBT6050

Following the issuance of the Offering Documents, the Exchange Act Defendants continued to mislead Silverback's investors by repeating representations regarding efficacy, safety, SBT6050's competitive advantage/addressable market, changes in pharmacodynamic markers, and SBT6290.  Defendants made clear to investors in Class Period filings that efficacy is a "key competitive factor affecting the success of all of our programs."  *In those same filings*, Defendants told investors that while "examining the anti-tumor activity of SBT6050…in addition to measuring biomarkers of immune cell activation," they "observed changes in pharmacodynamic markers."  They did not disclose, however, that any anti-tumor activity observed was limited and potentially attributable to pembrolizumab.[9]  Defendants are not entitled to cherry pick trial data to disclose when doing so without complete transparency as to related data would mislead investors.

_____

*Sec. Litig.*, 865 F.3d 1130, 1142-44 (9th Cir. 2017) (statements not puffery because they "'affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]'").

[9] Statements that Defendants observed changes in pharmacodynamic markers are statements of fact, not vague puffery as Defendants claim with no supporting argument in Def. Ex. 2.  Moreover, the literal accuracy of these statements is beside the point. *See supra,* § I.A.1.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                              - 14
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

*See Berson*, 527 F.3d at 987 (once defendants chose to speak, they "were bound to do so in a manner that wouldn't mislead investors"). By opting to report that they had observed changes in pharmacodynamic markers in patients treated with SBT6050 but failing to report that they only observed limited anti-tumor activity created a misleadingly rosy impression of what the trial data demonstrated. This also rendered statements regarding SBT6050's purported competitive advantage and addressable market as compared to other HER2 targeted therapies false and misleading. With limited anti-tumor activity observed, Defendants had no reasonable basis for stating that SBT6050 could treat more than just subsets of breast and gastric cancer or that it had an "expanded market opportunity." Defendants observed this data regarding their lead product candidate in real time as the *open label* trial progressed. Nevertheless, not only did they fail to reveal limited anti-tumor activity, but also that an overwhelming percentage of trial participants *withdrew from the trial due to disease progression*. *See Kendall v. Odonate Therapeutics, Inc.*, 2021 WL 3406271, at \*5 (S.D. Cal. Aug. 4, 2021) (finding statements actionable where defendants failed to reveal a high percentage of patient withdrawals from a clinical trial).

The Exchange Act Defendants additionally misled investors regarding safety, assuring that SBT6050 had a manageable safety profile, with no dose limiting toxicities, and only minor adverse events including flu-like symptoms and redness/swelling at the injection site. At no point did Defendants reveal that SBT6050 in fact did not have a manageable safety profile and that this, along with limited anti-tumor activity, would mean the end of the SBT6050 clinical program.

Defendants also chose to continue hyping their second product candidate, SBT6290, as an "expan[sion] on the potential of a TLR8 agonist as a payload," describing plans for SBT6290 without ever revealing that if the SBT6050 trial data evinced a lack of efficacy and safety, that would sound the death knell for SBT6290 as well, before they dosed a single SBT6290 patient.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                              - 15
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Defendants' deception went further.  The Complaint alleges that on September 13, 2021, the Abstract stated that among 14 evaluable patients for tumor types of interest (out of 18 treated at all four dose levels and 40 enrolled), only one patient had a partial response to the treatment with a 55% reduction in tumor size, three patients showed stable disease, and ten showed disease progression.  However, Defendants continued to maintain that the clinical trial data showed pharmacological activity "as demonstrated by the induction of blood-based biomarkers associated with myeloid cell and NK or T cell activation," SBT6050 "conferred clinical benefit to patients with heavily pre-treated, advanced solid tumors," showed early signals of anti-tumor activity as a monotherapy and in combination with a PD-1 inhibitor," and claimed SBT6050 had a "manageable safety profile."  They repeated these assurances in Silverback's November 2021 quarterly filings. The market heeded those assurances.  *See, e.g.,* Weinrib Decl., Ex. D (analyst SVB Leerink issuing an Outperform rating following the issuance of the Abstract, noting investors had expected "eye-catching efficacy" but stating that "the abstract did report a clear signal of immune activation and disease control with clinical benefit"); Ex. E (analyst H.C. Wainwright & Co. issuing a buy rating, stating, "We view the safety data and the biomarker data seen in the monotherapy arm to be positive and persuasive for development in combination to proceed.")

*As Defendants admitted a few months later in March 2022*, without identifying a single new piece of data that altered their evaluation after November 2021, SBT6050 in fact showed limited anti-tumor activity and did not have a manageable safety profile, thus necessitating the complete cessation of not only the SBT6050 program but SBT6290 as well.  In other words, the Complaint does not rely solely on an expert to establish the falsity of Defendants' statements—*Defendants themselves admitted that the open label trial data demonstrated a lack of clinical benefit to such a degree that they ultimately had to discontinue the program on that basis and*

BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

*fire over a quarter of their employees*. Plaintiffs' pharmaceutical expert corroborates that Defendants had no credible basis for stating that SBT6050 conferred clinical benefit and would have known based on their access to trial data existing when they made their statements that sufficient basis existed to discontinue the SBT6050 program.

Implicitly acknowledging an unpluggable chasm in their defense, Defendants claim without any support at least six times, that they discontinued SBT6050 and SBT6290 *based on some unidentified new data*. Mot. at 3, 9, 17, 19, 22, 24. There is nothing either in the record nor in any exhibit appended to the Mot. to support this self-serving baseless contention. Not a single disclosure stated that new trial data generated after September 2021 altered Defendants' conclusion that SBT6050 conferred clinical benefit or had a manageable safety profile so radically that they decided to discontinue the program. As late as November 2021 (16 months into the Phase 1/1b trial), Defendants still claimed that based on "pharmacodynamic biomarkers" they observed "early signs of anti-tumor activity, and no dose limiting toxicities." ¶ 72. Just a few months later, with no additional data identified as the impetus for the drastic decision, the Company announced the complete cessation of the SBT6050 *and* SBT6290 programs as well as the termination of *27% of its workforce*. Only by cutting over a quarter of its workforce could the Company afford to shift gears to begin developing another drug in its pipeline.

Defendants feebly defend their deception further by arguing they only stated "SBT6050 conferred clinical benefit to patients with heavily pre-treated, advanced solid tumors," but did not claim it "conferred clinical benefit to all patients." Mot. at 8. However, *__all patients treated with SBT6050 in the trial had "heavily pre-treated, advanced solid tumors."__ See* Weinrib Decl., Ex. C, pg. 128 ("Eligible patients must have HER2-expressing (HER2 IHC 2/3+) or HER2-amplified cancer *refractory to or relapsed after standard therapies*"); ¶ 51 ("In early clinical trials we will

be examining the anti-tumor activity of SBT6050 in patients that have *failed all available therapies associated with clinical benefit…"*); Def. Ex. E at 7.

Recasting the claim to suit their Motion, Defendants next argue that the claim is based merely on Plaintiffs' disagreement with Defendants' interpretation of the trial results. Mot. at 16, 17, 18, 21. "But with this argument, Defendants knock down a strawman." *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at \*\*16-17 (C.D. Cal. Aug. 4, 2014) (rejecting a similar argument that plaintiffs premised "a fraud claim upon a mere disagreement with how defendants chose to interpret the results of the clinical trial"). The Complaint alleges that Defendants failed to disclose that SBT6050 did not confer a clinical benefit due to limited anti-tumor activity and did not have a manageable safety profile. Plaintiffs don't base this claim on the opinion of the FDA, some other third party, or even Plaintiffs' own interpretation of the data—Defendants themselves observed this throughout the trial and but hid these material facts until announcing their decision to halt development of their two lead drug candidates and fire more than a quarter of their employees.[10]

Defendants' reliance on *Nektar* is also misplaced. *Okla. Firefighters Pension & Ret. Sys. v. Nektar Therapeutics (In re Nektar Therapeutics Sec. Litig.)*, 34 F.4th 828 (9th Cir. 2022). There, plaintiffs alleged that a chart of clinical trial data regarding Nektar's flagship product misled investors because defendants failed to disclose that the chart included "outlier data" regarding a particular patient. *Id.* However, defendants did not explain how an investor's assessment of the company would have changed if the outlier data had been excluded or what the exclusion of that data "would mean as a medical matter." *Id.* There is no such ambiguity here. The Complaint

---

[10] Defendants' generic risk disclosures are therefore also insufficient to exculpate any of their misleading statements given their contemporaneous access to the deficient trial data. *See, e.g., Pirani*, 445 F. Supp. 3d at 386; *Flynn v. Sientra, Inc.*, 2016 WL 3360676, at \*10-\*12 (C.D. Cal. June 9, 2016) (boilerplate warning is misleading where specific conditions known but concealed have caused the risk to manifest or made it significantly more likely); *Snap I*, 2018 WL 2972528, at \*6 (hypothetical risk disclosures are insufficient to absolve defendants of their duty to disclose).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                          - 18
(Case No. 2:21-cv-1499-MJP)

alleges that Defendants hid from investors that its lead drug candidate showed limited efficacy, did not have a manageable safety profile, and that this data not only meant they'd have to discontinue developing the drug but also a second drug utilizing the same mechanism.   The significance to investors that the Company's only drug in active development showed a lack of efficacy and safety is clear, as is the fact that seventeen out of forty trial participants withdrew due to disease progression, given that SBT6050 was supposed to halt or reverse progression.

Defendants cannot escape liability by claiming their statements are mere "expressions of opinion." Mot. at 14, Def. Ex. 3.  First, simply prefacing a statement with the words "we believe" does not provide carte blanche to omit facts from that statement such that it will mislead investors. Statements of opinion are actionably false, such as Defendants' statements regarding SBT6050's market opportunity, where there are "particular (and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Slomnitsky v. Caldwell (In re Allied Nev. Gold Corp. Sec. Litig.)*, 743 F. App'x 887, 887-88 (9th Cir. 2018) (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1332-33 (2015)).

Moreover, other statements Defendants argue are inactionable opinions are statements of fact that are not couched as statements of belief. *See, e.g.,* Def. Ex. 3,[11] citing to ¶ 56 ("Changes in pharmacodynamic markers have been observed in the first dose-escalation cohort of this trial");

---

[11] Exhibits 1-5 to the Fukumura Decl., Doc. Nos. 35-3 - 35-7, are collectively almost 20 pages of additional argument as to why statements in the Complaint, that are not discussed in Defendants' Mot., are inactionable, and thus constitute a violation of LCR 7(e)-(f) and should be stricken. FED. R. CIV. P. 12(f). *See, e.g., Todd v. Tempur-Sealy Int'l, Inc.*, 2016  WL 5746364 , at *4 n.3 (N.D. Cal. Sep. 30, 2016) ("It is difficult to view this appendix as anything other than an unsubtle vehicle for deliberately circumventing the page limits imposed on the parties' briefing."); *Jiangchen v. Rentech, Inc.*, 2017 WL 10363990, at *4 (C.D. Cal. Nov. 20, 2017)(striking similar charts defendants claimed to have submitted for the court's convenience.)

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                          - 19
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

¶ 59 ("[efficacy is a] key competitive factor affecting the success of all of our programs"); ¶ 60 ("…Changes in pharmacodynamic markers consistent with the potential mechanism of action were observed in treated patients…); ¶¶ 69-70 (statements that SBT6050 "conferred clinical benefit," "showed early signals of anti-tumor activity as a monotherapy and in combination with a PD-1 inhibitor," and had a "manageable safety profile"); ¶ 72 ("we observed induction of pharmacodynamic biomarkers indicative of myeloid, T, and NK cell act on, early signs of anti-tumor activity, and no dose limiting toxicities (DLTs)").  Defendants had no basis for making these proclamations of fact given their contemporaneous review of trial data that did not demonstrate a manageable safety profile, anything other than limited anti-tumor activity, and showed overwhelming occurrences of disease progression (including patient withdrawals for that reason).

### D.       The Falsity Allegations Satisfy Pleading Requirements

Defendants wrongly argue that the Court should dismiss this case on puzzle pleading grounds. Mot. at 11. The Complaint is carefully organized, alleges each misleading statement and related omission, including date and the author thereof, and after each group of misstatements, lists the reasons why those statements were misleading.  Courts have repeatedly found this style of pleading permissible. *Bos. Ret. Sys. v. Uber Techs., Inc.,* 2020 WL 4569846, at *5 (N.D. Cal. Aug. 7, 2020) (rejecting defendants' puzzle pleading argument though the complaint was "long, confusing, and meandering," such that "it is difficult to locate the main points within it," because defendants could still "figure[e] out what statements are alleged to be false."); *In re Acadia Pharm. Inc. Sec. Litig.,* 2020 WL 2838686, at *4 (S.D. Cal. June 1, 2020) (rejecting puzzle pleading argument though the complaint "does contain large block quotes," because, "Plaintiff's complaint

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                              - 20
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

does single out the actual statements that are the basis of Plaintiff's securities fraud claim.").[12]

### E.   The Complaint Adequately Pleads the Exchange Act Defendants' Scienter

A strong inference of scienter exists if "a reasonable person would deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.  Allegations are examined holistically. *Id.*  The inference "need not be irrefutable, *i.e.* of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'"  *Id.* "Scienter can be established by direct or circumstantial evidence." *Gebhart v. S.E.C.*, 595 F.3d 1034, 1041 (9th Cir. 2010).  Between competing inferences, "a tie goes to the plaintiff." *In re Amgen, Inc. Sec. Litig.*, 2014 WL 12585809, at *8 (C.D. Cal. Aug. 4, 2014).

#### 1.   Defendants' Access to Data Contributes to the Inference of Scienter

"The absence of actual knowledge is not fatal to a Section 10(b) claim involving misstatements in the clinical trial context," as Defendants wrongly argue. *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *9.  Plaintiffs are not required to plead that each Defendant "actually received" data contradicting their statements. *Id.* at *11. "Where a strong inference suggests that a defendant was on notice of clinical findings before making contradictory public statements, the defendant's conduct is at least "deliberately reckless" under Section 10(b)." *Id.*  The SBT6050 trial was open label, so Defendants had access to trial data in real time from day one. *Sparling v. Daou (In re Daou Sys.),* 411 F.3d 1006, 1022 (9th Cir. 2005) (allegations that executives monitored company database a factor in favor of inferring scienter).

---

[12] The cases Defendants rely upon do not support dismissal with prejudice on puzzle pleading grounds. *See, e.g., In re Loudeye Corp. Sec. Litig.*, 2007 WL 2404626, at **9, 11 (W.D. Wash. Aug. 17, 2007) (though deeming the complaint "puzzle-like," declining to dismiss on those grounds given that plaintiff "attempted in their opposition brief to identify more narrow and specific categories of alleged misstatements," and granting leave to amend after concluding the complaint failed to allege actionable misstatements); *Mauss v. Nuvasive, Inc.*, 2014 WL 4161431, at *8 (S.D. Cal. Aug. 19, 2014) (dismissing plaintiff's complaint for failing to allege false or misleading statements on grounds in addition to puzzle pleading but providing plaintiffs with leave to amend "as it may be possible for Plaintiff to resolve these deficiencies.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                         - 21
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

Moreover, the Complaint alleges that Defendant Shawver held company wide meetings every two weeks, with mandatory attendance for *all employees* to report on and discuss trial data, ¶ 46[13], and made clear that the trial focused on "safety, tolerability, PK [(pharmacokinetics)], pharmacodynamics, (PD), immunogenicity, and anti-tumor activity of SBT6050." ¶ 40. Defendants' attendance and access to data at these meetings further contributes to the inference of scienter. *In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *9 (finding that attendance at meetings where trial data discussed contributed to the inference of scienter even though Plaintiff did not allege that "any [] 'presenter' at the [] meeting discussed the specifics of the [] data"). The absence of details like the precise data discussed at these meetings, Mot. at 17, is "far from fatal." *Id.* at **35-36. The most plausible inference (far surpassing the "equipoise" requirement of *Tellabs*) is that the attendees discussed the efficacy and safety of the Company's lead product candidate and only product undergoing clinical testing at these biweekly meetings.[14] To suggest that matters of efficacy and safety were "neither discussed nor even mentioned at the [biweekly meetings] is both 'patently incredible' and 'absurd.'" *See Id.* at *39.[15]

### 2. The Core Operations Doctrine Contributes to the Inference of Scienter

Where a particular issue "'is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter,'" the core operations doctrine allows the Court

---

[13] Based on the statements of CW1, a senior research scientist and associate scientist who attended Defendant Shawver's meetings during the Class Period.

[14] Defendants explained that they placed early focus on examining anti-tumor activity and biomarkers of immune cell activation so they could "seek expedited approval from the FDA based on surrogate endpoints (through the Accelerated Approval path) and expedited FDA review through programs such as Breakthrough Therapy, Priority Review, or Fast Track designation."

[15] Defendants only remaining challenges to this allegation are irrelevant and equally absurd. First, it is of no moment whether the non-executive director Defendants—*i.e.,* the Securities Act Defendants—attended these meetings given that scienter is not an element of the Securities Act claims. Second, that CW1 attended *the same meetings* as the Exchange Act Defendants where they evaluated trial data is sufficient for scienter; there is no obligation for Plaintiffs to plead that CW1 directly communicated with any Defendant at these meetings.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 22
(Case No. 2:21-cv-1499-MJP)

to infer scienter even in the absence of specific evidence establishing that a particular individual knew a particular fact. *Flynn*, 2016 WL 3360676, at \*15. The essentiality of SBT6050 to Silverback's business is undisputed. With no approved products, no revenue, and no other product undergoing clinical testing, SBT6050 was the *sin qua non* of Silverback's business. Moreover, Defendants made clear that the efficacy of its "lead product candidate" is a "key competitive factor affecting the success of all of our programs." ¶ 59. The most compelling inference is that each Defendant had access to and actual knowledge of trial data reflecting efficacy, or the lack thereof, of their lead drug candidate, and only drug in active development. Courts in this Circuit have used the core operations doctrine to find scienter even in the absence of actual knowledge. *See, e.g., In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at \*11; *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 941-43 (9th Cir. 2003).

### 3.   Signatures, Quotes, and SOX Certifications Contribute to the Inference of Scienter

Signatures, SOX certifications, and quotes in the misleading SEC filings also contribute to the compelling inference of scienter because Defendants put themselves forth as knowledgeable regarding the SBT6050 trial data and thus triggered a duty to speak truthfully and completely.

### F.   **The Complaint Adequately Pleads Loss Causation**

Loss causation is subject to the less rigorous pleading requirement of Rule 8(a)(2) and is "not meant to impose a great burden upon a plaintiff." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Complaint alleges that Silverback shares fell in response to two corrective disclosures: 1) the Abstract issued on September 13, 2021, which caused a $4.54 (23.35%) stock drop; and 2) Defendants' announcement on March 31, 2022 that they discontinued the SBT6050 and SBT6290 programs, which caused an 8.55% drop. The Abstract revealed for the first time that out of forty enrolled patients, only eighteen received treatment at all four dose levels, only fourteen

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                         - 23
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

of those patients were "response-evaluable," only one showed a reduction of tumor size, three showed stable disease, ten showed *disease progression,* and seventeen out of the forty had already withdrawn from the trial that also had *disease progression.* With this revelation, and thereafter, Defendants continued to claim that the trial data showed SBT6050 conferred clinical benefit, demonstrated anti-tumor activity, and had a manageable safety profile. The March 31, 2022 corrective disclosure, however, revealed that the SBT6050 trial data actually showed limited anti-tumor activity, a troubling safety profile, that therefore the Company had to discontinue not only the SBT6050 program but also the SBT6290 program based on the trial data, and had to terminate 27% of its workforce in order to afford shifting gears to develop an entirely different drug. Contrary to Defendants' conclusory arguments, Mot. at 24, these allegations suffice to create a connection between the misstatements and the decline of Silverback shares following the corrective disclosures. *Constr. Workers Pension Tr. Fun – Lake Cnty. v. Genoptix, Inc*., 2013 WL 12123841, at *24-25 (S.D. Cal. Mar. 22, 2013).

### G.    The Complaint Adequately Pleads §§ 15 and 20(a) Claims

Defendants argue that the §15 and §20(a) claims should be dismissed solely for failure to plead the §11 and §10(b) primary violations. *See* Mot. at 24. Thus, if the Court upholds the §11 and §10(b) claims, the §15 and §20(a) claims will also survive.

## IV.    CONCLUSION

For these reasons, Plaintiffs respectfully request that the Motion be denied.[16]

Dated:  July 11, 2022                                    **BADGLEY MULLINS TURNER PLLC**

---

[16] If the Court is inclined to grant the Motion, Plaintiffs respectfully request leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Curry v. Hansen Med., Inc.*, 2011 WL 3741238, at *2 (N.D. Cal. Aug. 25, 2011)(in §10(b) cases, "[l]eave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment"); *Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                    - 24
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

/s/ *Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone: (206) 621-6566
dturner@badgleymullins.com

*Of Counsel*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice*)
Tamar A. Weinrib
(*pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Lead Counsel for Plaintiffs*

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                    - 25
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Yonten Dorjee*
Yonten Dorjee, Paralegal
**BADGLEY MULLINS TURNER PLLC**
Email:  ydorjee@badgleymullins.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS                                                     - 26
(Case No. 2:21-cv-1499-MJP)

**BADGLEY MULLINS TURNER** PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
**TEL** 206.621.6566
**FAX** 206.621.9686