UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| BENJAMIN DRESNER, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SILVERBACK THERAPEUTICS, INC., LAURA K. SHAWVER, JONATHAN PIAZZA, RUSS HAWKINSON, PETER THOMPSON, VICKIE L. CAPPS, ROBERT HERSHBERG, SAQIB ISLAM, ANDREW POWELL, JONATHAN ROOT, THILO SCHROEDER, and SCOTT PLATSHON,<br><br>Defendants. | Case No. 2:21-cv-1499-MJP<br><br>SECOND AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

Lead Plaintiff Benjamin Dresner ("Lead Plaintiff") and additional Plaintiff Ann Ettinger ("Additional Plaintiff," collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Silverback Therapeutics, Inc. ("Silverback" or the "Company"), analyst reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Silverback common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about December 3, 2020 (the "IPO" or "Offering"); and/or (b) Silverback securities between March 29, 2021 and March 31, 2022, both dates inclusive (the "Class Period"). Plaintiffs pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

2. Silverback[1], a clinical-stage biopharmaceutical company, had never earned revenue for product sales and had no approved marketable drug. The Company's lead product candidate during the Class Period was an antibody drug conjugate called SBT6050, which it designed to target and activate immune cells within certain types of tumors that express a particular protein called HER2, and to thereby promote localized tumor killing by those immune cells without impacting non-targeted cells. In other words, SBT6050 was supposed to shrink tumors in patients that had failed prior available therapies, and to do so through targeted treatment using Silverback's novel mechanism, thus minimizing the chance of adverse safety events.

3. Purportedly on the road to seeking FDA approval to market SBT6050, the Company began an open label Phase 1/1b clinical trial in July 2020, five months prior to its initial public offering ("IPO"), to evaluate SBT6050's safety but also to evaluate biomarkers of immune cell activation and anti-tumor activity, aka tumor regression (*i.e.*, efficacy). Defendants designed the Phase 1/1b trial to evaluate SBT6050 both as a monotherapy (administered alone) and also in combination with a FDA approved standard of care immunotherapy called pembrolizumab.

4. On November 10, 2020, Silverback filed a registration statement on Form S-1 with the SEC in connection with its IPO, which, after several amendments, was declared effective by the SEC on December 3, 2020 (the "Registration Statement"). On or about December 3, 2020, pursuant to the Registration Statement, Silverback's common stock began trading on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "SBTX." On December 4, 2020, Silverback

---

[1] On November 8, 2022, ARS Pharmaceuticals, Inc. completed a reverse merger with Silverback. Silverback thereafter changed its name to ARS Pharmaceuticals, Inc. ("ARS Pharma") and began trading on the Nasdaq Global Select Market on November 9, 2022 under the trading symbol SPRY. Despite Silverback's name change, this Complaint will continue to refer to the Company as Silverback to avoid confusion.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents"). Pursuant to the Offering Documents, Silverback conducted the IPO, issuing 11.5 million shares of common stock priced at $21.00 per share.

5. In the Offering Documents, the Securities Act Defendants (defined below) told investors that they had observed early signs of efficacy. Specifically, the Offering Documents stated that in the months since the trial's commencement, Defendants had "observed changes in pharmacodynamic markers" in the first six patients treated with SBT6050 as a monotherapy, observations they explained "have been associated with tumor regression" and further explained that these changes "are consistent with the potential mechanism of action."

6. Defendants also touted their second drug in development, SBT6290, which they described at length, explaining that SBT6290 expanded on the same mechanism as SBT6050 to activate immune cells for localized tumor treatment, and detailing plans to submit an investigational new drug ("IND") application to the FDA in the fourth quarter of 2021.

7. The negligently prepared Offering Documents misled Silverback investors in violation of Section 11 of the Securities Act because, while comprehensively describing the changes in pharmacodynamic markers observed in the Phase 1/1b trial and touting Silverback's second drug candidate, SBT6290, they failed to disclose that: (i) though changes in pharmacodynamic biomarkers had been "associated with tumor regression" in preclinical studies and NHP studies of SBT6050, patients treated thus far with SBT6050 as a monotherapy only exhibited *limited* anti-tumor activity despite the observed changes in pharmacodynamic markers; and (ii) if SBT6050 did not demonstrate more than limited anti-tumor activity as a monotherapy in Phase 1/1b testing, the Company would have to discontinue the clinical programs for both



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

SBT6050 ***and*** SBT6290 given that they both utilize use the same mechanism to activate immune cells for targeted tumor treatment.

8. With the Company's filing of its first Form 10-K on March 29, 2021 for the year ending December 31, 2020, and in SEC filings throughout the Class Period, the Exchange Act Defendants (defined below) identified efficacy as a "key competitive factor affecting the success of all of our programs," and continued to represent that SBT6050 showed early signs of clinical benefit based on changes in pharmacodynamic markers consistent with the potential mechanism of action.

9. In reality, Defendants' contemporaneous evaluation of the open label trial data not only revealed *limited* anti-tumor activity but revealed disease progression in an overwhelming percentage of trial patients. Indeed, no later than April 4, 2021 (and likely sooner), the Exchange Act Defendants knew that ***ten out of fourteen*** evaluable trial participants—including patients that had been treated with SBT6050 as a monotherapy as well as patients that had received SBT6050 in combination with pembrolizumab-- had experienced ***disease progression***. Moreover, no later than August 1, 2021 (and likely sooner), the Exchange Act Defendants had access to information indicating that ***sixty percent of trial patients experienced disease progression.*** Specifically, ***seventeen out of forty patients*** treated with SBT6050 ultimately ***discontinued study treatment due to disease progression*** and ***ten others*** that remained enrolled in the trial also showed ***disease progression***.

10. Additionally, the Exchange Defendants misled investors by touting SBT6050's safety advantage over *untargeted* (whereas SBT6050 is targeted) TLR8 small molecule therapeutic candidates from other companies which "have resulted in an adverse event profile that we believe has limited achieving a dose level sufficient to produce the desired therapeutic benefit." They



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

further represented that patients treated with SBT6050 had “no DLTs” (dose limiting toxicities) and that “the “most common adverse events included flu-like symptoms (fever, chills, nausea, vomiting, fatigue) and redness and swelling at the injection site.” However, by no later than April 4, 2021 (and likely sooner), Defendants had access to safety data regarding those same patients, which demonstrated that SBT6050 when used in conjunction with pembrolizumab did not have a manageable safety profile.[2]

11. The Exchange Act Defendants further misled Silverback investors by opting to speak in detail about SBT6290 and its expansion upon the same mechanism used by SBT6050 but never revealing that if the trial data for SBT6050 reflected limited efficacy or adverse safety, that would doom not only the SBT6050 clinical program but SBT6290 as well. In other words, if the Phase 1/1b clinical trial data did not demonstrate anti-tumor activity and a manageable safety profile, Silverback, with no other drugs in active clinical development, no revenue, and no FDA approved products to commercialize, would have its pipeline wiped out in one fell swoop.

12. On September 13, 2021, Silverback issued a press release “announc[ing] that interim data from the dose-escalation portion of its Phase 1/1b clinical trial evaluating SBT6050 as a monotherapy and in combination with pembrolizumab in patients with advanced or metastatic HER2-expressing or amplified solid tumors will be presented at the upcoming European Society for Medical Oncology (ESMO) 2021 Congress from September 16-21, 2021” and advising that “[t]he accepted abstract . . . is now available on the ESMO website.” The accepted abstract (the “Abstract”), indicated that ***as of April 4, 2021*** (six days after Silverback issued its first 10-K), the data showed that among fourteen evaluable patients treated with SBT6050 for multiple tumor

---

[2] Cytokine-release syndrome is a potentially life-threatening systemic inflammatory reaction which is observed after infusion of agents targeting different immune effectors.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

types, only one patient experienced a reduction in tumor size, three had stable disease, and ***ten experienced disease progression***. The Abstract made clear that Silverback had also assessed safety, reporting that the most frequent treatment emergent adverse events ("TEAEs") were chills, diarrhea, fatigue, hypotension, injection site reaction, nausea, pyrexia and vomiting.

13. On this news, Silverback's stock dropped $4.54 per share, or 23.35%, to close at $14.90 per share on September 13, 2021 on unusually heavy volume.

14. In the full presentation made at ESMO on September 16, 2021 ("ESMO Presentation"), relying on data with a cutoff data of ***August 1, 2021***, Defendants disclosed for the first time that out of "forty patients enrolled across five dose levels, allowing for robust safety, pharmacokinetic (PK), and [pharmacodynamic] evaluation," ***<u>seventeen</u>*** had discontinued study treatment due to progression of disease, another ***<u>seven</u>*** had withdrawn consent for unidentified reasons and no longer took part in the study, another ***<u>ten</u>*** patients remaining on study also experienced disease progression, and ***<u>five</u>*** patients had died "on study" due to disease progression. The ESMO Presentation also identified the same TEAEs in a chart, but indicated that "all [dose limiting toxicities] resolved with supportive care and "no treatment-related TEAEs led to discontinuation." In a footnote, the ESMO Presentation stated that "CRS was reported in 4 patients." Thoguh not defined anywhere in the presentation, CRS stands for "cytokine release syndrome." *Nevertheless*, Defendants continued to maintain that SBT6050 "conferred clinical benefit to patients with heavily pre-treated, advanced solid tumors," showed "early signals of anti-tumor activity," with "proof-of-mechanism established," and stated that "SBT6050 monotherapy or in combination with pembrolizumab has a manageable safety profile."

15. Following the release of the ESMO Presentation, Silverback's stock dropped 23% on September 16, 2021 to close at $12.50 on unusually heavy volume.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

16. In Silverback's subsequent Form 10-Q filed on November 10, 2021 for the third quarter ended September 30, 2021 and related press release, Defendants doubled down on their assurances to the market regarding SBT6050's efficacy and safety, stating that they observed "early signs of anti-tumor activity," "data that establish proof-of-mechanism" and adverse events consistent with on-mechanism immune activation that resolved with supportive care.

17. It therefore came as a shock to the market when a few months later, on March 31, 2022, Silverback filed a Form 10-K announcing its financial results for the fourth quarter and full year ended December 31, 2021 and providing a corporate update, which revealed that Silverback had discontinued its SBT6050 program based on *limited monotherapy anti-tumor activity* and observed *cytokine-related adverse events* that limited the dose in combination with pembrolizumab. Based on the disappointing SBT6050 data, the Company announced that it would also discontinue its program for SBT6290 due to the likelihood of it having a similar clinical profile to SBT6050. Silverback further revealed that, as a result of these discontinued programs, it would cut its workforce by 27%. Defendants did not indicate that any *new* data had been analyzed between September 2021 and March 2022 to cause Silverback's decision to discontinue the two drugs.

18. On this news, Silverback's stock dropped 8.55% to close at $3.21.

19. With its two main clinical programs wiped out and dwindling cash reserves, Silverback pivoted entirely, merging with ARS Pharma on November 8, 2022 via reverse merger, following which Silverback changed its name to ARS Pharma and is now developing and planning to seek FDA approval for an epinephrine nasal spray.

20. To date, the price of Silverback common stock continues to trade far below the $21.00 per share Offering price, damaging investors.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

21. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Silverback's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

22. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

23. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

24. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Silverback is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

25. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

26. Lead Plaintiff and Additional Plaintiff, as set forth in certifications previously filed with this Court, purchased or otherwise acquired Silverback common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or purchased or



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

otherwise acquired Silverback securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

27. Defendant Silverback is a Delaware corporation with principal executive offices located at 500 Fairview Ave N, Suite 600, Seattle, Washington 98109. The Company's common stock traded during the Class Period in an efficient market on the NASDAQ under the ticker symbol "SBTX." *See also supra*, footnote 1.

28. Defendant Laura K. Shawver ("Shawver") served as Silverback's Chief Executive Officer and as a Director at all relevant times. Shawver signed or authorized the signing of the Registration Statement filed with the SEC, as well as each of the Company's annual 10-Ks and quarterly 10-Qs filed during the Class Period. Defendant Shawver stepped down as CEO upon the close of the merger with ARS Pharma.

29. Defendant Jonathan Piazza ("Piazza") served as Silverback's Chief Financial Officer at all relevant times. Piazza signed or authorized the signing of the Registration Statement filed with the SEC, as well as each of the Company's annual 10-Ks and quarterly 10-Qs filed during the Class Period.

30. Defendants Shawver and Piazza are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

31. The Exchange Act Individual Defendants possessed the power and authority to control the contents of Silverback's SEC filings, press releases, and other market communications. The Exchange Act Individual Defendants were provided with copies of Silverback's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

their positions with Silverback, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

32. Silverback and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

33. Defendant Russ Hawkinson ("Hawkinson") has served as Senior Vice President of Finance of Silverback at all relevant times. Hawkinson signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

34. Defendant Peter Thompson ("Thompson") has served as Silverback's Chairman of the Board of Directors at all relevant times. Thompson signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

35. Defendant Vickie L. Capps ("Capps") served as a Director of the Company at the time of the IPO. Capps signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

36. Defendant Robert Hershberg ("Hershberg") served as a Director of the Company at the time of the IPO. Hershberg signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

37. Defendant Saqib Islam ("Islam") served as a Director of the Company at the time of the IPO. Islam signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

38. Defendant Andrew Powell ("Powell") served as a Director of the Company at the time of the IPO. Powell signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

39. Defendant Jonathan Root ("Root") served as a Director of the Company at the time of the IPO. Root signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

40. Defendant Thilo Schroeder ("Schroeder") served as a Director of the Company at the time of the IPO. Schroeder signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

41. Defendant Scott Platshon ("Platshon") served as a Director of the Company at the time of the IPO. Platshon signed or authorized the signing of the Registration Statement filed with the SEC, as well as the Company's annual 10-Ks.

42. The Exchange Act Individual Defendants and Defendants Hawkinson, Thompson, Capps, Hershberg, Islam, Powell, Root, Schroeder, and Platshon are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

43. As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Silverback common stock in the IPO for their own benefit and the benefit of Silverback. The Securities Act Individual Defendants were key members of the IPO working group and executives of Silverback who pitched investors to purchase the shares sold in the IPO, including in IPO road shows.

44. Silverback and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

45. The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

46. Silverback, a clinical-stage biopharmaceutical company, has incurred significant operating losses since inception, has never had any products approved for sale and has never generated any revenue from product sales or otherwise. Its accumulated deficit doubled from $96.7 million as of December 31, 2020 to $186.2 million as of December 31, 2021 and its net losses tripled from $32.9 million to $89.5 million in that same timeframe. Beginning with the Offering Documents, and continuing in SEC filings thereafter, Defendants have explained that "until such time as we can generate significant revenue from sales of our product candidates, if ever, we expect to finance our cash needs through public or private equity offerings, debt financings, collaborations and licensing arrangements or other capital sources." Silverback raised $255.3 million in its IPO.

47. The Company's lead product candidate during the Class Period was SBT6050, a TLR8 agonist linker-payload conjugated to a HER2-directed monoclonal antibody that targets tumors, such as breast, gastric, and non-small cell lung cancers. SBT6050 is an Antibody-Drug Conjugate ("ADC"). ADC's consist of a payload, which is a small molecule drug, and an antibody that is engineered against an antigen, like a tumor-specific antigen, on the target cell surface. The payload and the antibody are joined by a chemical linker. When the ADC binds to the target antigen, the payload is released and exerts its effect in the targeted cell, ideally minimizing the effect on non-targeted cells that don't have the antigen of interest.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

48. Figuring out optimal dosing is key because the payload is cytotoxic, or toxic to living cells, so a small increase in systemic exposure of the payload can cause significant adverse reactions. For SBT6050, designed to treat tumors such as certain breast, gastric and non-small cell lung cancers, the payload is a TLR8 agonist, which is linked to a HER2-directed antibody. It is designed to activate myeloid cells that exert an immune response to treat targets. Myeloid cells play major roles in innate immunity and can comprise between 5% and 10% of a tumor. Per the Company, activating those myeloid cells "results in direct tumor killing and recruitment of immune cells."

49. The Offering Documents explained that, "TLR8 activation of human myeloid cells elicits an anti-tumor response through a multi-pronged ***mechanism of action***, including direct tumor cell killing, recruitment of immune cells, and the secondary activation of NK cells, T cells and B cells, thus driving both an innate and adaptive immune response against the tumor." (Emphasis added).

**Clinical Testing of SBT6050**

50. Silverback initiated a Phase 1/1b clinical trial in July 2020, which it has explained in its SEC filings, was "designed to evaluate the safety, tolerability, PK [(pharmacokinetics)], pharmacodynamics, (PD), immunogenicity, and anti-tumor activity of SBT6050 as a single agent and in combination with pembrolizumab, a PD-1 inhibitor[3]," and to measure "biomarkers of immune cell activation."

---

[3] A PD-1 inhibitor is a type of immunotherapy that stimulates the body's immune system to fight cancer cells. Pembrolizumab is an FDA approved standard of care treatment used as an immunotherapy to help fight certain cancers.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

51. In other words, in the Phase I/IB trial, the Company tested the *safety* *and* *efficacy* of SBT6050 both as a monotherapy and in combination with pembrolizumab. The Company conducted the Phase 1/1b trial in four parts: monotherapy dose-escalation and expansion (Part 1), monotherapy dose expansion in tumor-specific cohorts (Part 2), pembrolizumab combination dose-escalation (Part 3), and a pembrolizumab combination dose expansion cohort (Part 4).

52. Defendants explained that the trial would evaluate pharmacodynamic biomarkers of immune cell activation of SBT6050 in patients that have failed all available therapies associated with clinical benefit, in addition to measuring biomarkers of immune cell activation. Defendants made the significance of such pharmacodynamic activity clear by explaining in the Offering Documents that "key PD biomarkers in both the blood and the tumor…***have been associated with tumor regression*** [*i.e.* anti-tumor activity]"—*efficacy*—in "preclinical mouse studies and was observed in our preclinical NHP studies." (Emphasis added).

53. Defendants identified the *precise changes* in "key" pharmacodynamic biomarkers that had been associated with tumor regression, *i.e.*, "elevations in MCP-1, IP-10, and C-reactive protein and induction of… IFNg" which indicates "on target mechanism of action."

54. At the time the Securities Act Defendants filed the Offering Documents, the Phase 1/1b trial had already been ongoing for five months. The six patients[4] enrolled in the first dose cohort had already received 0.3 mg/kg of SBT6050 in Part 1 of the trial, receiving a median of 3.5 doses 14 days apart. ***The trial was open-label, meaning both the researchers and participants knew what treatment was being administered, and Defendants could access the trial data in real***

---

[4] The Offering Documents indicates that two of the first four patients initially enrolled did not complete the "DLT period and therefore were replaced." In other words, following the replacement, and at the start of dosing, the first dose cohort still had six patients enrolled actively receiving treatment with SBT6050 as a monotherapy.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

***time***. Throughout the duration of the trial, patients received CT scans every eight weeks until week twenty-four and then every sixteen weeks thereafter.

55. By April 4, 2021[5] (and likely sooner), less than a week after Silverback filed its first Form 10-K, the Exchange Act Defendants had access to data showing that ***ten out of fourteen*** evaluable trial participants—including patients that had been treated with SBT6050 as a monotherapy *as well as* patients that had received SBT6050 in combination with pembrolizumab from Parts 1 and 3-- had experienced ***disease progression***. Additionally, by April 4, 2021 Defendants had access to all the safety data, and particularly the TEAEs that had occurred to date, from those same patients treated in both Part 1 and Part 3 of the Phase 1/1b trial.

56. Moreover, no later than August 1, 2021[6] (and likely sooner), the Exchange Act Defendants had access to information indicating that ***sixty percent of trial patients experienced disease progression.*** Specifically, ***seventeen out of forty patients*** treated with SBT6050 (including patients treated with SBT6050 as a monotherapy in Part 1 *and* patients treated with SBT6050 and pembrolizumab together in Part 3) had already ***discontinued study treatment due to disease progression*** and ***ten others*** that remained enrolled in the trial also showed ***disease progression***. Moreover, the Exchange Act Defendants had access to safety data regarding all forty patients, which included data regarding incidents of TEAEs, including cytokine-release syndrome.

57. According to Confidential Witness ("CW") 1, who worked for Silverback from April 2018 until August 2021 as a senior research scientist and then an associate scientist, Defendant Shawver held company wide meetings every two weeks with mandatory attendance for

---

[5] Per the data cutoff identified in the Abstract.

[6] Per the data cutoff identified in the ESMO Presentation.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

all employees to report and discuss trial data. Teams, including the in-house clinical lab team and employees sharing data gathered from external clinical testing sites, presented data from the SBT6050 clinical trials.

58. In the Offering Documents and in filings throughout the Class Period, Defendants touted SBT6050 for the treatment of HER2-expressing solid tumors as compared to other FDA approved therapies and spoke in detail about the Phase 1/1b trial including observed changes in pharmacodynamic markers and observed adverse events. Defendants also touted Silverback's second drug in development, SBT6290 which it described as expanding upon the potential of a TLR8 agonist as a payload, the same mechanism as SBT6050. At no point did Defendants reveal that they observed limited anti-tumor activity in patients treated with SBT6050 alone, that a large percentage of trial patients discontinued the trial due to disease progression, that a large percentage of trial patients that remained on trial also experienced disease progression, that SBT6050 administered along with pembrolizumab caused cytokine related adverse events that would necessitate the discontinuation of the trial, and that limited efficacy or indications of a troubling safety profile would doom not just the SBT6050 clinical program but also SBT6290.

59. Plaintiffs consulted an expert, Todd Clark, to assess Defendants' statements regarding the Phase 1/1b trial data and results. Mr. Clark has a Master of Science degree in drug development and regulation from Johns Hopkins University and an MBA from the Kellogg School of Business at Northwestern University. He is a pharmaceutical expert with approximately 30 years of experience consulting for branded and generic drug companies, as well as biotech firms, investment banks, and health technology services to advise them on, among other things, drug development and clinical trial design. According to Mr. Clark, Silverback had no credible basis for stating in its September 16, 2021 investor presentation that "SBT6050 conferred clinical



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

benefit to patients with heavily pre-treated, advanced solid tumors" because most patients did not experience any apparent benefit. Indeed, of the twenty-four patients with evaluable CT scans, fifteen showed progressive disease, eight had stable disease, and only one experienced an improvement in the form of partial tumor response. Four of the eight with stable disease were also treated with pembrolizumab, a highly successful FDA-approved cancer agent. In addition, ***seventeen patients treated during the trial withdrew prior to August 1, 2021 due to disease progression***. The Company, which had been tracking data as the open-label trial progressed, should have known that treatment with SBT6050 alone showed limited anti-tumor activity, thereby providing a sufficient basis for discontinuing the trial for SBT6050 as a monotherapy.

**Materially False and Misleading Statements Issued in the Offering Documents (§11)**

60. In the Offering Documents, the Securities Act Defendants represented to Silverback investors that SBT6050 showed early signals of clinical benefit and also touted the Company's second drug in development, SBT6290 which uses the same mechanism as SBT6050.

61. Specifically, the Offering Documents stated that, "In this trial, we have observed changes in pharmacodynamic markers in the first dose cohort..." The Offering Documents relatedly stated that, "[c]hanges in pharmacodynamic markers consistent with the potential mechanism of action have been observed in treated patients where data is available." The Offering Documents described the pharmacodynamic changes observed in detail:

> This includes increases in plasma levels of CRP (C-reactive protein), a marker of inflammation, increases in MCP-1, IP-10 and IL-6, which are indicative of myeloid cell activation, increases in IFNg which is a marker for T and NK cell activation, and decreases in hemoglobin which we believe to be due to macrophage phagocytosis.

62. The Offering Documents further stated, as of November 25, 2020, one of the six patients treated with SBT6050 as a monotherapy in the dose cohort had "stable disease" and one



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

other had "target lesion reduction," providing investors with the false impression that the SBT6050 showed early signs of efficacy. Though the Securities Act Defendants had access to the open label data regarding the remaining four trial participants, they did not disclose their tumor status.[7]

63. The Offering Documents also described SBT6290, Silverback's second drug candidate, which the Securities Act Defendants touted as expanding on the same mechanism SBT6050 used to activate immune cells for targeted tumor killing:

> SBT6290 is our second product candidate, expanding on the potential of a TLR8 agonist as a payload. The same TLR8 linker-payload used in SBT6050 is conjugated to a monoclonal antibody that targets Nectin4. Nectin4 is expressed in subsets of solid tumors including bladder, triple negative breast, head and neck, and non-small cell lung cancers, and has been clinically validated through the approval of the antibody-drug conjugate enfortumab vedotin (Padcev). We anticipate submitting the IND for SBT6290 in the fourth quarter of 2021.

64. The negligently prepared Offering Documents misled Silverback investors in violation of Section 11 of the Securities Act because, while comprehensively describing the changes in pharmacodynamic markers observed in the Phase 1/1b trial and detailing Silverback's second drug candidate, SBT6290, they failed to disclose that: (i) though these same changes in pharmacodynamic biomarkers had been "associated with tumor regression" in preclinical studies and NHP studies of SBT6050, patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity despite observed changes in pharmacodynamic markers; and (ii) if SBT6050 did not demonstrate more than limited anti-tumor activity as a monotherapy in Phase 1/1b testing, the Company would have to discontinue the clinical programs for both SBT6050 ***and*** SBT6290 given that they both utilize the TLR8

---

[7] All six of the patients treated with SBT6050 as a monotherapy in the first dose cohort withdrew from the trial no later than April 4, 2021 ***due to disease progression***.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

agonist as a payload (*i.e.* function using the same mechanism to activate immune cells for targeted tumor treatment).

65. Analyst reports issued following the filing of the Offering Documents confirmed the market's understanding that changes in pharmacodynamic markers in patients treated with SBT6050 as a monotherapy meant early signs of efficacy. For example, SVB Leerink issued a lengthy report initiating coverage at outperform and setting a $40 price target, stating that they're "gaining confidence from clinical pharmacodynamic data" and further stating therein:

> …we would view single agent activity with SBT6050, particularly in tumors with lower HER2 or PD-L1 expression, as ***establishing proof-of-principle*** for Silverback's ImmunoTAC platform.
>
> ***
>
> ***Silverback reported encouraging, albeit very early, clinical benefit***…

(Emphasis added).

**<u>Materially False and Misleading Statements Issued During the Class Period (§10(b))</u>**

66. The Class Period begins on March 29. 2021, when Silverback filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended December 31, 2020 (the "2020 10-K"). Therein, the Exchange Act Defendants represented that, "[c]hanges in pharmacodynamic markers have been observed in the first dose-escalation cohort of this trial." After describing one patient who had stable disease and one who had a "reduction in the diameter of her target lesion at 8 weeks" they further represented that, "[c]hanges in pharmacodynamic markers consistent with the potential mechanism of action were observed in treated patients." The Exchange Act Defendants described these changes in pharmacodynamic markers in detail:

> This included increases in plasma levels of CRP (C-reactive protein), a marker of inflammation, increases in MCP-1, IP-10 and IL-6, which are indicative of myeloid cell activation, increases in IFNg, which is a marker for T and NK cell activation,



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

> and transient decreases in hemoglobin, which we believe to be due to macrophage phagocytosis.

67. The 2020 10-K also touted SBT6050's safety advantage over *untargeted* (whereas SBT6050 is targeted) TLR8 small molecule therapeutic candidates from other companies which "have resulted in an adverse event profile that we believe has limited achieving a dose level sufficient to produce the desired therapeutic benefit." Regarding safety data emerging from the Phase 1/1b trial, the 2020 10-K stated, in relevant part:

> The most common adverse events included flu-like symptoms (fever, chills, nausea, vomiting, fatigue) and redness and swelling at the injection site.

68. In the 2020 10-K the Exchange Act Defendants also comprehensively described SBT6290, Silverback's second drug candidate, which they touted as expanding on the same mechanism SBT6050 used to activate immune cells for targeted tumor killing:

> SBT6290 is our second product candidate, expanding on the potential of a TLR8 agonist as a payload. The same TLR8 linker-payload used in SBT6050 is conjugated to a monoclonal antibody that targets Nectin4. Nectin4 is expressed in subsets of solid tumors including bladder, triple negative breast, head and neck, and non-small cell lung cancers, and has been clinically validated through the approval of the antibody-drug conjugate enfortumab vedotin (Padcev). We anticipate submitting the IND for SBT6290 in the fourth quarter of 2021.

69. Appended to the 2020 10-K as an exhibit was a signed certification pursuant to the Sarbanes-Oxley Act of 2002 by Defendants Shawver and Piazza, attesting that, "[t]he information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

70. Corresponding with the 2020 10-K, Silverback issued a press release on March 29, 2021 announcing the Company's Q4 and full year 2020 financial results and recent corporate updates. In the press release, Defendant Shawver once again stated, in relevant part, that "***pharmacological activity was observed in the first dose cohort.***" Like the 2020 10-K, the press release further stated that:



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

> Changes in pharmacodynamic markers consistent with the potential mechanism of action have been observed in patients treated in the first monotherapy dose cohort.

(Emphasis added).

71. The foregoing statements in the 2020 10-K and the March 29, 2020 press release regarding changes in pharmacodynamic markers and potential mechanism of action misled Silverback investors by failing to disclose that, though these same changes in pharmacodynamic biomarkers had been "associated with tumor regression" in preclinical studies and NHP studies of SBT6050, patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity despite observed changes in pharmacodynamic markers. In fact, by no later than April 4, 2021 (***six days later***), ten patients had already experienced disease progression in Part 1 (SBT6050 as a monotherapy) and Part 3 (SBT6050 in combination with pembrolizumab) of the Phase 1/1b trial.

72. Moreover, the Exchange Act Defendants' statements regarding safety data from the Phase 1/1b trial misled Silverback investors because patients treated in Part 3 of the trial with SBT6050 in combination with pembrolizumab suffered cytokine related adverse events thus demonstrating that SBT6050 used in conjunction with pembrolizumab did not have a manageable safety profile.

73. Finally, the Exchange Act Defendants' statements regarding SBT6290 failed to reveal that if SBT6050 did not demonstrate more than limited anti-tumor activity as a monotherapy in Phase 1/1b testing or demonstrated troubling safety signals, the Company would have to discontinue the clinical programs for both SBT6050 ***and*** SBT6290 given that they both utilize the TLR8 agonist as a payload (*i.e.* function using the same mechanism to activate immune cells for targeted tumor treatment).



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

74. On May 13, 2021, Silverback filed its 10-Q for the first quarter of 2021 ending March 31, 2021, signed by Defendants Shawver and Piazza, and issued a press release the same day. Regarding the SBT6050 Phase 1/1b trial, the 10-Q once again stated that, "In this trial, we have observed changes in pharmacodynamic markers in the first dose cohort."

75. The foregoing statements regarding changes in pharmacodynamic markers misled investors because, though the same changes in pharmacodynamic biomarkers had been "associated with tumor regression" in preclinical studies and NHP studies of SBT6050, patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity despite observed changes in pharmacodynamic markers. In fact, by no later than April 4, 2021 (***over a month prior***), ten patients had already experienced disease progression in both Part 1 (SBT6050 as a monotherapy) and Part 3 (SBT6050 in combination with pembrolizumab) of the Phase 1/1b trial, and by no later than August 1, 2021, seventeen out of forty patients withdrew from Parts 1 and 3 of the Phase 1/1b trial due to disease progression and ten patients remaining on trial also experienced disease progression.

76. The press release issued the same day touted the "progress and preclinical data" for Silverback's second drug candidate, SBT6290.

77. The statements in the press release regarding SBT6290 failed to reveal that, despite "the progress and preclinical data" the Exchange Act Defendnats touted for SBT6290, if SBT6050 did not demonstrate more than limited anti-tumor activity as a monotherapy in Phase 1/1b testing, the Company would have to discontinue the clinical programs for both SBT6050 ***and*** SBT6290 given that they both utilize the TLR8 agonist as a payload (*i.e.* function using the same mechanism to activate immune cells for targeted tumor treatment).



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

78. On August 12, 2021, Silverback filed its 10-Q for the second quarter ending June 30, 2021, signed by Defendants Shawver and Piazza. Regarding the SBT6050 Phase 1/1b trial, the 10-Q once again stated that, "In this trial, we have observed changes in pharmacodynamic markers in the first dose cohort."

79. The foregoing statements regarding changes in pharmacodynamic markers misled investors because, though the same changes in pharmacodynamic biomarkers had been "associated with tumor regression" in preclinical studies and NHP studies of SBT6050, patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity despite observed changes in pharmacodynamic markers. In fact, by no later than August 1, 2021 (***11 days prior***), seventeen patients had already withdrawn from Part 1 (SBT6050 as a monotherapy) and Part 3 (SBT6050 in combination with pembrolizumab) of the Phase 1/1b trial due to disease progression, and ten patients remaining on trial also experienced disease progression.

80. In a press release also issued on August 12, 2021, the Company revealed that it had already submitted its clinical abstract "for poster presentation at the European Society for Medical Oncology ('ESMO') 2021 Annual Meeting [to] provide an update on the monotherapy dose-escalation arm (Part 1) and the pembrolizumab combination dose-escalation arm (Part 3) of the SBT6050-101 Phase 1/1b study."

**<u>The Truth Begins to Emerge</u>**

81. On September 13, 2021, Silverback issued a press release "announc[ing] that interim data from the dose-escalation portion of its Phase 1/1b clinical trial evaluating SBT6050 as a monotherapy and in combination with pembrolizumab in patients with advanced or metastatic HER2-expressing or amplified solid tumors will be presented at the upcoming European Society



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

for Medical Oncology (ESMO) 2021 Congress from September 16-21, 2021" and advising that "[t]he accepted abstract . . . is now available on the ESMO website."

82. The Abstract indicated that the data reported therein was "[a]s of 4 April 2021." Out of eighteen patients treated at four dose levels either with SBT6050 as a monotherapy in Part 1 or in combination with pembrolizumab in Part 3 prior to April 4, 2021, only fourteen were evaluable. Out of those fourteen, only one patient showed a partial response, three showed stable disease, and ten showed disease progression.

83. The Abstract also reported on safety data, current as of April 4, 2021, stating that:

> The most frequent (>25%) related TEAEs were chills, diarrhea, fatigue, hypotension, injection site reaction, nausea, pyrexia, and vomiting. Dose levels >0.6 mg/kg were evaluated to assess the upper limits of the dose range; Grade 3 DLTs that resolved with supportive care were observed in Part 1 at 1.2 mg/kg Q2 weeks.

84. The Abstract concluded:

> Based on preliminary safety data, SBT6050 given alone or in combination with pembrolizumab ***has a manageable safety profile***. Related TEAEs are consistent with immune activation. A single-agent dose of 0.6 mg/kg administered Q2 weeks had a tolerable safety profile, drug exposure that reflects evidence of target saturation, and pharmacodynamics indicative of myeloid, NK and T cell activation.

(Emphasis added).

85. On this news, Silverback stock dropped $4.54 per share, or 23.35%, to close at $14.90 per share on September 13, 2021 on unusually heavy volume.

86. Analyst SVB Leerink issued a flash note that day, indicating that the stock trading down resulted from "investor expectations for eye-catching efficacy." Investors would not have held such expectations but for Defendants' assuring statements in the Offering Documents and in SEC filings throughout the Class Period. In any event, SVB Leerink still found that the "abstract did report a ***clear signal of immune activation and disease control with clinical benefit***…" (Emphasis added).



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

87. Then, on September 16, 2021, Defendants presented the full investor slide presentation at the European Society of Medical Oncology, titled "SBT6050-101: Phase 1/1B, Interim Clinical Study Update." The ESMO Presentation indicated that the data contained therein from Parts 1 and 3 of the Phase 1/1b trial, had a cutoff of August 1, 2021. The ESMO Presentation stated that Silverback had evaluated "[f]orty patients enrolled across five dose levels, allowing for robust safety, pharmacokinetic (PK), and [pharmacodynamic] evaluation." ***Of those forty patients, only thirteen remained on treatment as of August 1, 2021***. The ESMO Presentation further revealed for the first time that prior to August 1, 2021, ***seventeen patients discontinued study treatment due to progression of disease*** and seven discontinued study treatment due to withdrawal of consent (for unidentified reasons). Moreover, ***five patients died on study due to disease progression***. Of eighteen evaluable patients, only one patient had a partial response showing tumor regression, seven had stable disease (three treated with SBT6050 as a monotherapy and four treated with SBT6050 in combination with pembrolizumab), and the remaining ten showed disease progression.

88. Nevertheless, Defendants identified " Proof-of-mechanism established" and "Early signals of anti-tumor activity in a heavily pre-treated heterogenous population" as highlights of the interim data, and further represented in the ESMO Presentation that:

> SBT6050 ***conferred clinical benefit*** to patients with heavily pre-treated, advanced solid tumors
>
> ***
>
> ***Emerging clinical data supports proof-of-mechanism*** for localized TLR8 agonism and the ImmunoTAC platform, 2 evidenced by the robust activation of innate and adaptive immune response seen in patients
>
> ***



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

> SBT6050 has demonstrated ***early signals of anti-tumor activity*** as a monotherapy and in combination with a 3 PD-1 inhibitor, ***with a manageable safety profile*** consistent with an active IO agent

(Emphasis added).

89. Regarding safety, Defendants reported the same TEAEs they identified in the Abstract but further explained in a footnote that four patients had experienced "CRS" (cytokine-release syndrome) and assured that "no treatment-related TEAEs led to discontinuation." They further stated the following "highlight" with regard to SBT6050's safety:

> SBT6050 monotherapy or in combination with pembrolizumab ***has a manageable safety profile***
>
> ▪ Common adverse events were consistent with immune activation
> ▪ At higher monotherapy dose levels, on-mechanism DLTs were observed and resolved with supportive care
> ▪ The safety profile of SBT6050 in combination with pembrolizumab was similar to SBT6050 monotherapy

(Emphasis added).

90. As a result of the ESMO Presentation, Silverback stock fell 23% on unusually heavy volume to close at $12.50 a share on September 16, 2021.

91. That the market heeded Defendants' assurances regarding the trial data is evidenced by an analyst report released on September 16, 2021 by H.C. Wainwright & Co., maintaining a "Buy" rating on Silverback stock and citing, in part, the lack of severe instances of cytokine-release syndrome, for its conclusion that, "***We view the safety data and the biomarker data seen in the monotherapy arm to be positive and persuasive for development in combination to proceed***." (Emphasis added).

92. Two months later, on November 10, 2021 the Company filed its 10-Q for the third quarter 2021, which stated the following regarding the Phase 1/1b trial data:

> ***The interim update included data we believe are consistent with proof-of-mechanism through SBT6050's ability to activate myeloid, T and NK cells, as***



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

> ***well as evidence of SBT6050 payload localization in the tumor microenvironment, observed adverse events consistent with on-mechanism immune activation, and early signals of anti-tumor activity***.
>
> ***
>
> As reported in the September 2021 interim update, at the 0.15 mg/kg and 0.3 mg/kg SBT6050 dose levels in combination with pembrolizumab, ***we observed induction of pharmacodynamic biomarkers indicative of myeloid, T, and NK cell activation, early signs of anti-tumor activity, and no dose limiting toxicities (DLTs***).

93. By continuing to represent that SBT6050 conferred clinical benefit, Defendants misled investors because the trial data to date demonstrated limited tumor activity in patients treated with SBT6050 as a monotherapy, which would necessitate the cessation of the clinical program for SBT6050.

94. The 3Q 2021 also reported on safety data providing that:

> At SBT6050 dose levels above 0.3 mg/kg in combination with pembrolizumab, DLTs were observed. Two patients dosed at 0.6 mg/kg each experienced a DLT, ***including hypotension and cytokine release syndrome (CRS)***. These adverse events resolved with supportive care and both patients continued treatment at a reduced dose. Two patients were subsequently enrolled at a dose level of 0.45 mg/kg plus pembrolizumab. The first patient tolerated the first dose well and remained on study. The second patient, a 75-year-old with metastatic gastric cancer and underlying conditions including diabetes, hyperlipidemia and anemia, experienced serious adverse events (SAEs) of CRS, hypoxia, and hypotension following the first dose. The patient received supportive care that included tocilizumab and vasopressors; however, the patient developed decreased cardiac function due to demand-related ischemia. The patient made the decision not to further escalate supportive care and subsequently passed away. The investigator reported that the cause of death was attributed to Grade 5 hypotension considered related to SBT6050. Patients currently enrolled in the pembrolizumab dose-escalation arm were dose-reduced to 0.3 mg/kg, as applicable.

(Emphasis added).

95. The Exchange Act Defendants' statements regarding safety data from the Phase 1/1b trial misled Silverback investors because the occurrence of cytokine related adverse events in patients treated in Part 3 of the trial demonstrated that SBT6050 used in conjunction with



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

pembrolizumab did not have a manageable safety profile, limited to dose the Company could administer, and meant they'd have to discontinue developing SBT6050 altogether.

96. Regarding Silverback's second product candidate utilizing the same mechanism as SBT6050, Defendants stated in relevant part:

> SBT6290, our second product candidate, expands on the potential of a TLR8 agonist as a payload. SBT6290 is a TLR8 linker-payload conjugated to a monoclonal antibody that targets Nectin4, which is expressed in certain bladder, triple negative breast, head and neck, and non-small cell lung cancers. We submitted an investigational new drug application for SBT6290 in the fourth quarter of 2021, and we anticipate beginning clinical development in the first quarter of 2022.

97. The Exchange Act Defendants' statements regarding SBT6290 failed to reveal that because of limited anti-tumor activity observed in patients treated with SBT6050 as a monotherapy and cytokine-related adverse events observed in patients treated with SBT6050 along with pembrolizumab, Silverback would have to discontinue not only the clinical program for SBT6050 ***but also*** SBT6290 given that they both utilize the TLR8 agonist as a payload (*i.e.* function using the same mechanism to activate immune cells for targeted tumor treatment).

**<u>The Truth Fully Emerges</u>**

98. On March 31, 2022, Silverback reported its fourth quarter results for 2021 and announced that it had discontinued its SBT6050 program based on limited monotherapy anti-tumor activity and observed cytokine-related adverse events that limited the dose in combination with pembrolizumab. Based on the data regarding SBT6050, the Company announced that it would also discontinue its program for SBT6290 due to the likelihood of it having a similar clinical profile to SBT6050. Silverback further revealed that, as a result of these discontinued programs, it would cut its workforce by 27%.

99. On this news, Silverback's stock dropped 8.55% to close at $3.20.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

100. To date, the price of Silverback common stock continues to trade far below the $21.00 per share Offering price, damaging investors.

101. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Silverback's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**ADDITIONAL SCIENTER ALLEGATIONS FOR §10(b)**

102. The Exchange Act Defendants' access to data contributes to the inference of scienter. The SBT6050 trial was open label, which means the Exchange Act Defendants had access to the Phase 1/1b trial data in real time.

103. Defendant Shawver held biweekly companywide meetings, with mandatory attendance for *all employees* to report on and discuss trial data, which focused on *inter alia*, safety tolerability, pharmacodynamics, anti-tumor activity, and immune cell activation.

104. The Abstract makes clear that the Exchange Act Defendants had access to efficacy data from Parts 1 and 3 of the Phase 1/1b trial no later than April 4, 2021 showing that ten out of fourteen evaluable trial participants experienced disease progression, only one trial participant showed any sign of tumor regression, and three showed stable disease. The Exchange Act Defendants also had access to safety data from those same patients treated in Parts 1 and 3 of the Phase 1/1b trial no later than April 4, 2021.

105. The ESMO Presentation explicitly states that the Exchange Defendants had access to data from Parts 1 and 3 of the Phase 1/1b trial no later than August 1, 2021 showing that, out of forty trial participants, seventeen had withdrawn due to disease progression, ten patients remaining on trial showed disease progression, only one trial participant showed any sign of tumor regression, and seven showed stable disease. The Exchange Act Defendants also had access to safety data



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

from those forty patients treated in Parts 1 and 3 of the Phase 1/1b trial no later than August 1, 2021, including data regarding the incidence of cytokine related adverse events.

106. Silverback had one lead product candidate: SBT6050. The Company had no FDA approved drugs on the market and no source of revenue generation. The Exchange Act Defendants' sole focus was on the Phase 1/1b data, which they contemporaneously evaluated for safety and early signs of efficacy.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

107. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Silverback common stock in the IPO or purchased Silverback common stock thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; or (b) Silverback securities during the Class Period; and were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

108. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Silverback securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Silverback or its transfer agent and may be notified



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

109. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

110. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiffs has no interests antagonistic to or in conflict with those of the Class.

111. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Silverback;
- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;
- whether the Exchange Act Individual Defendants caused Silverback to issue false and misleading financial statements during the Class Period;
- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Silverback securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

112. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

113. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Silverback securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiffs and members of the Class purchased, acquired and/or sold Silverback securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

114. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

115. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

116. Plaintiffs repeat and incorporate each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

117. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

118. The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

119. Silverback is the registrant for the IPO. The Securities Act Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

120. As issuer of the shares, Silverback is strictly liable to Plaintiffs and the Class for the misstatements and omissions in the Offering Documents.

121. None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

122. By reasons of the conduct herein alleged, each Securities Act Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

123. Plaintiffs acquired Silverback shares pursuant and/or traceable to the Offering Documents for the IPO.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

124. Plaintiffs and the Class have sustained damages. The value of Silverback common stock has declined substantially subsequent to and because of the Securities Act Defendants' violations.

**COUNT II**

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

125. Plaintiffs repeat and incorporate each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

126. This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

127. The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Silverback within the meaning of Section 15 of the Securities Act. The Securities Act Individual Defendants had the power and influence and exercised the same to cause Silverback to engage in the acts described herein.

128. The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiffs and the Class.

129. By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiffs and the Class for damages suffered.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

**COUNT III**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

130. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

131. This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

132. During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Silverback securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Silverback securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

133. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

described above, including statements made to securities analysts and the media that were designed to influence the market for Silverback securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Silverback's finances and business prospects.

134. By virtue of their positions at Silverback, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants. Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth. In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

135. Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control. As the senior managers and/or directors of Silverback, the Exchange Act Individual Defendants had knowledge of the details of Silverback's internal affairs.

136. The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Silverback. As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

with respect to Silverback's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Silverback securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Silverback's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Silverback securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

137. During the Class Period, Silverback securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Silverback securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Silverback securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Silverback securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

138. By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

139. As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

**(Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)**

140. Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

141. During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Silverback, and conducted and participated, directly and indirectly, in the conduct of Silverback's business affairs. Because of their senior positions, they knew the adverse non-public information about Silverback's misstatement of income and expenses and false financial statements.

142. As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Silverback's financial condition and results of operations, and to correct promptly any public statements issued by Silverback which had become materially false or misleading.

143. Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Silverback disseminated in the marketplace during the Class Period concerning Silverback's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Silverback to engage in



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

the wrongful acts complained of herein. The Exchange Act Individual Defendants therefore were "controlling persons" of Silverback within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Silverback securities.

144. Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Silverback. By reason of their senior management positions and/or being directors of Silverback, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Silverback to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Silverback and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

145. By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Silverback.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: December 5, 2022

**BADGLEY MULLINS TURNER PLLC**

*/s/ Duncan C. Turner*
Duncan C. Turner, WSBA No. 20597
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
Telephone: (206) 621-6566
dturner@badgleymullins.com

***Of Counsel***

**POMERANTZ LLP**
Jeremy A. Lieberman (*pro hac vice*)
Tamar A. Weinrib (*pro hac vice*)
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
taweinrib@pomlaw.com

***Lead Counsel for Plaintiffs***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of December, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Yonten Dorjee*
Yonten Dorjee, Paralegal
**BADGLEY MULLINS TURNER PLLC**
Email: ydorjee@badgleymullins.com



BADGLEY MULLINS TURNER PLLC
19929 Ballinger Way NE, Suite 200
Seattle, WA 98155
TEL 206.621.6566
FAX 206.621.9686