The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

BENJAMIN DRESNER Individually and On Behalf of All Others Similarly Situated,

Plaintiffs,

v.

SILVERBACK THERAPEUTICS, INC., LAURA K. SHAWVER, JONATHAN PIAZZA, RUSS HAWKINSON, PETER THOMPSON, VICKIE L. CAPPS, ROBERT HERSHBERG, SAQIB ISLAM, ANDREW POWELL, JONATHAN ROOT, THILO SCHROEDER, and SCOTT PLATSHON,

Defendants.

Case No. 2:21-cv-01499-MJP

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

NOTE ON MOTION CALENDAR:
**January 27, 2023**

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

**TABLE OF CONTENTS**

**PAGE**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

    A.      Plaintiffs' Opposition Does Not Rescue Their Deficient Section 11 Claim.......... 1

        1.      Plaintiffs' Section 11 claim still sounds in fraud. ..................................... 1

        2.      Plaintiffs cannot identify a materially misleading omission...................... 2

    B.      Plaintiffs Do Not Plead a False or Misleading Statement During the Class
        Period. ...................................................................................................... 6

    C.      "Access to Data" and "Core Operations" Do Not Establish Scienter................. 11

    D.      Plaintiffs' Opposition Adds Nothing to Their Loss Causation Allegations. ....... 12

    E.      The SAC Does Not State a Claim for Control Person Liability. ......................... 12

III.    CONCLUSION................................................................................................... 12

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**                     i
**Case No. 2:21-cv-01499-MJP**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*In re Acadia Pharmaceuticals Inc. Securities Litigation,*
  2020 WL 2838686 (S.D. Cal. June 1, 2020)..............................................................................6

*In re Allied Nevada Gold Corp. Securities Litigation,*
  743 F. App'x 887 (9th Cir. 2018) ............................................................................................9

*In re Amgen Inc. Securities Litigation,*
  2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)...........................................................8, 9, 10, 12

*Berson v. Applied Signal Technology, Inc.,*
  527 F.3d 982 (9th Cir. 2008) ..................................................................................................8

*Boston Retirement System v. Uber Technologies, Inc.,*
  2020 WL 4569486 (N.D. Cal. Aug. 7, 2020) ..........................................................................6

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.,*
  856 F.3d 605 (9th Cir. 2017) ..................................................................................................9

*Colyer v. AcelRx Pharmaceuticals Inc.,*
  2015 WL 7566809 (N.D. Cal. Nov. 25, 2015) ..................................................................11, 12

*Construction Workers Pension Trust Fund v. Genoptix, Inc.,*
  2013 WL 12123841 (S.D. Cal. Mar. 22, 2013) ..................................................................11, 12

*In re CytRx Corp. Securities Litigation,*
  2017 WL 5643161 (C.D. Cal. Aug. 14, 2017).......................................................................4, 8

*Derr v. Ra Medical Systems, Inc.,*
  2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ......................................................................4, 5

*In re Eventbrite, Inc. Securities Litigation,*
  2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) .........................................................................8

*In re Immune Response Securities Litigation,*
  375 F. Supp. 2d 983 (S.D. Cal. 2005).................................................................................5, 6

*Kendall v. Odenate Therapeutics, Inc.,*
  2021 WL 3406271 (S.D. Cal. Aug. 4, 2021) ...........................................................................7

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018) ..................................................................................................4

*Knollenberg v. Harmonic, Inc.,*
  152 F. App'x 674 (9th Cir. 2005) .........................................................................................11

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**    ii
**Case No. 2:21-cv-01499-MJP**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Leavitt v. Alnylam Pharmaceuticals, Inc.*,
 451 F. Supp. 3d 176 (D. Mass. 2020) ...................................................................10

*Mineworkers' Pension Scheme v. First Solar Inc.*,
 881 F.3d 750 (9th Cir. 2018) ...................................................................2, 6, 12

*In re Sanofi Securities Litigation*,
 87 F. Supp. 3d 510 (S.D.N.Y. 2015)...................................................................4, 10

*Schueneman v. Arena Pharmaceuticals, Inc.*,
 840 F.3d 698 (9th Cir. 2016) ...................................................................5, 6, 12

*Singh v. Schikan*,
 106 F. Supp. 3d 439 (S.D.N.Y. 2015)...................................................................5, 11

*In re Zillow Group, Inc. Securities Litigation*,
 2018 WL 4735711 (W.D. Wash. Oct. 2, 2018) ...................................................................2

**Statutes**

Securities Exchange Act of 1934.......................................................................................

 Section 10(b).......................................................................................... *passim*

 Section 20(a) ...................................................................12

Securities Act of 1933.......................................................................................

 Section 11........................................................................................... *passim*

 Section 15.......................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 8 ...........................................................................1, 2

Federal Rule of Civil Procedure 9(b)...................................................................1, 2, 12

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

iii

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

## I.   INTRODUCTION

In their Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("SAC"), Plaintiffs confirm that their Section 11 claim still relies on the conclusory "open label" theory to plead falsity. But their Opposition doubles-down on hindsight, working backward from Silverback's disclosure of interim results *in September 2021* to construct an entirely speculative theory that Defendants "had access to data" and "observed disease progression" before the *December 2020* IPO. Plaintiffs' factual allegations do not remotely support the inferential leap their theory requires, even under Rule 8 standards. Moreover, their theory makes no sense, even if it were well-pleaded: the allegedly concealed data showing "disease progression" in patients with advanced, treatment-resistant cancer, in an early stage trial of an experimental therapy, would not have rendered misleading Defendants' *accurate* statements about the clinical trial *when made*.

The same conclusory (and non-sensical) theory underpins Plaintiffs' Section 10(b) claim, and the SAC falls well short of *particularized* factual allegations that Defendants knew or recklessly disregarded clinical data that rendered any statement during the Class Period misleading by omission. Plaintiffs come no closer to pleading falsity by disputing Defendants' opinions that accompanied their disclosure of the interim data. The SAC's failure to plead falsity, as well as the requisite strong inference of scienter, and loss causation, requires dismissal.

## II.   ARGUMENT

### A.   Plaintiffs' Opposition Does Not Rescue Their Deficient Section 11 Claim.

#### 1.   Plaintiffs' Section 11 claim still sounds in fraud.

Plaintiffs' attempt to argue their way out of Rule 9(b) pleading standards is unavailing. (*See* Opp. 8–9.) It is not enough for Plaintiffs to "split [the SAC] into two parts," label the Section 11 claim separately, and use adjectives like "negligent" rather than "intentional." (*See* Mot. 8–9 & n.11.) Despite those superficial distinctions, Plaintiffs' allegations regarding Defendants' alleged concealment of clinical data are substantively identical in the Section 11 and Section 10(b) portions

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**                    1.
**Case No. 2:21-cv-01499-MJP**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

of the SAC.[1] The Court should again apply Rule 9(b) pleading standards to Plaintiffs' Section 11 claim, but as explained below, the SAC fails to plead falsity even under Rule 8.

### 2.    Plaintiffs cannot identify a materially misleading omission.

The SAC does not adequately plead either category of alleged omissions that Plaintiffs argue in their Opposition: "observed changes in pharmacodynamic markers" or "statements touting SBT6290." (Opp. 10.) It does not matter whether the alleged omissions are couched as fraudulent or negligent, because the SAC fails to plead the omission of *any* material information that rendered any statement in the Offering Documents misleading *when made*.

***Observed Changes in PK Markers***. Plaintiffs confirm, grudgingly, that they do not dispute the factual accuracy of a single statement in the Offering Documents. (*See* Opp. 10 & 11 n.6.) And their argument that Defendants conveyed "the false impression that SBT6050 exhibited early signs of efficacy" (Opp. 10) fails for three reasons. *First*, Plaintiffs still rely on their flawed "open label" theory to show falsity. Without support from new CWs or internal documents, Plaintiffs argue that Defendants "had access" to the interim data and "observed disease progression" *before* the December 2020 IPO.[2] They claim their theory does not require "too far an inferential leap" (Opp. 12), but their attempt to manufacture the existence of clinical data by working backward from the Abstract's data cutoff is just as speculative as the "company-wide meetings" the Court found unpersuasive before. The Abstract did report that, as of April 4, 2021, there were 14 evaluable patients in Part 1 (monotherapy) and Part 3 (combo therapy), collectively, with 10 different tumor types, treated at 4 different escalating dose levels (Ex. L at 1); of those 14, 10 "had experienced disease progression" (Opp. 12). But the Abstract does not detail when any of the 14 evaluable

---

[1] (*Compare* ¶ 64 ("patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity"), *with* ¶ 75 ("patients treated with SBT6050 as a monotherapy in the first dose cohort of the Phase 1/1b trial only exhibited limited anti-tumor activity").)

[2] Defendants are not "challeng[ing] falsity with a scienter argument." (*See* Opp. 13.) The absence of well-pleaded factual allegations demonstrating scienter under Section 10(b)—*i.e.*, insufficient facts to support a strong inference of Defendants' *knowledge* of contrary data—also precludes a showing that Defendants had *access* to contrary data under Section 11. *See In re Zillow Grp., Inc. Sec. Litig.*, 2018 WL 4735711, at *4 (W.D. Wash. Oct. 2, 2018) ("[F]alsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts.").

DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS SAC                    2.
Case No. 2:21-cv-01499-MJP

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

patients began treatment or how many doses they had received by April 4. It is thus sheer speculation for Plaintiffs to argue that "the first-dose cohort had already received 0.3 mg/kg of SBT6050 every two weeks for five months" at the time of the IPO. (*Id.*) In fact, the Registration Statement disclosed that, as of November 25, 2020, the six patients in the 0.3 mg/kg monotherapy cohort had "received **between one and nine doses** of SBT6050"; so **the range of on-treatment time spanned from two weeks to 18 weeks**. (Ex. C at 129.[3]) The Registration Statement further disclosed that two patients in the first-dose monotherapy cohort had been replaced after discontinuing treatment, and one of the two evaluable patients had been on treatment only since mid-September (10 weeks). (*Id.*)

Plaintiffs rely on the same false premise to argue that, by the time of the IPO, "at least two other first dose cohort patients treated with 0.3 mg/kg had been evaluated at 5 and 8 weeks post initial dose respectively" in addition to the two evaluable patients disclosed in the Registration Statement. (*See* Opp. 12.) The SAC pleads no facts (including from the ESMO Presentation) showing or suggesting that all six patients in the first-dose cohort began treatment at the same time in July 2020.[4] The inference Plaintiffs ask the Court to draw from this speculative patchwork—"at the time of the IPO, the data not only demonstrated *limited anti-tumor activity*, but also showed disease progression" (*id.*)—is unsupported by a single well-pleaded factual allegation.[5]

*Second*, even if Plaintiffs had pleaded adequately that clinical data showing "disease progression" was available to Defendants at the time of the IPO, that would not have rendered the challenged statements misleading by omission. The Offering Documents extensively detailed the preclinical studies of SBT6050 (Ex. C at 118–27) and how the findings from those preclinical studies informed Silverback's design of the Phase 1/1b Trial (*id.* at 127–29). Specifically, the trial **was designed** to "monitor[] key PD biomarkers in both the blood and the tumor" **because** those

---

[3] Unless otherwise noted, all emphases are added and all internal cites and quotations are omitted.

[4] Even more speculative is Plaintiffs' argument that "disease progression" would have been obvious in the first *combination* therapy cohort. (Opp. 12.) Plaintiffs vaguely assert that those patients had "begun treat[ment]" in November 2020, without even *guessing* how many patients, how long each had been on treatment, or how many doses each had received by that point. (*See id.*)

[5] Plaintiffs also wrongly assert that "twenty seven out of forty patients in the first and third cohorts had progressive disease." (Opp. 17.) The ESMO Presentation reported that 17 patients discontinued treatment because of progressive disease, and 10 others discontinued treatment *for other reasons*. (Ex. O at 11.)

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

3.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

same PD biomarkers were found to "have been *associated* with tumor regression in [Silverback's] *preclinical* mouse studies" and were "*observed* in [Silverback's] *preclinical* NHP studies." (*Id.* at 128.) The details of the trial itself—enrollment criteria, trial sites, principal investigator, dosages, cohorts, parts, duration, primary and secondary endpoints—were public record. (*Id.*; Ex. S.)

Plaintiffs do not challenge the accuracy of *any* of these disclosures, nor the Offering Documents' reports of observed changes in PK markers in the first-dose monotherapy cohort. Yet they ask the Court to infer from this series of unchallenged disclosures that investors were misled to believe that SBT6050 "exhibited early signs of efficacy." Plaintiffs identify no statement in which Defendants expressly "equated changes in [PK] markers with efficacy." (Opp. 10–11.) But even if that could be inferred—*and* even if well-pleaded facts showed that clinical data available at the time revealed "disease progression"—it does not follow that investors were somehow "misled." At the time of the IPO, only five months into a planned two-year study, the lowest-dose cohort in monotherapy was ongoing and the lowest-dose cohort in combination therapy had just started. (Ex. C at 128–30.) These patients—and all others to come—were eligible to participate only because they had advanced metastatic tumors and had failed all prior therapies. (Ex. S at 5–6.) No reasonable investor would be surprised to learn that some (even many) patients in this very ill population, at this early stage of the trial, had experienced disease progression. Indeed, the Registration Statement specifically cautioned investors about these very risks. (*See* Ex. C at 5, 18, 20–21.[6])

*Third*, the cases Plaintiffs cite reveal the inadequacy of the SAC's falsity allegations.[7] In *Khoja v. Orexigen Therapeutics, Inc.* (Opp. 8), defendants publicly touted interim results without disclosing the FDA's guidance that the results had "a high degree of uncertainty and were likely to change with the accumulation of additional data." *See* 899 F.3d 988, 1010 (9th Cir. 2018). In *Derr v. Ra Medical Systems, Inc.* (Opp. 11 n.6), defendants' statements implied that the company "simply

[6] Plaintiffs dismiss the Silverback's risk warnings as "generic" without explaining how those warnings could have been any more specific. (*See* Opp. 17 n.11.) And, unlike the cases Plaintiffs cite, there are no well-pleaded factual allegations showing that the risks warned of had already manifested—*i.e.*, that clinical data showing "disease progression" was available to Defendants at the time of the IPO.

[7] Plaintiffs make no argument against the application of Defendants' cases. (Mot. 16, 20; *In re CytRx Corp. Sec. Litig.*, 2017 WL 5643161 (C.D. Cal. Aug. 14, 2017); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510 (S.D.N.Y. 2015).)

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**                                4.
**Case No. 2:21-cv-01499-MJP**

couldn't keep up with demand as [it] scaled up catheter production"; but an internal audit committee report, among other well-pleaded facts, showed that the company had been producing defective catheters for more than a year. *See* 2021 WL 1117309 at *2, *6 (S.D. Cal. Mar. 24, 2021). The SAC alleges nothing close to the misstatements in *Orexigen* or *Ra*, and pales in comparison to *In re Immune Response Securities Litigation* (Opp. 10). There, plaintiffs' factual allegations "include[d] corroborating details of the internal reports, cite[d] to specific reports, mention[ed] the dates or contents of reports and allege[d] their sources of information about the reports." *See* 375 F. Supp. 2d 983, 999–1002, 1019 (S.D. Cal. 2005). Unlike here, those Section 11 plaintiffs had "alleged with *particularity* statements that were false and/or misleading *when made*." *Id.*

*SBT6290.* Despite Silverback's comprehensive disclosures regarding SBT6290's similarities to SBT6050 (Ex. C at 131; ¶¶ 58, 96), Plaintiffs argue that "[i]nvestors could just as easily have concluded that though the two drugs use the same TLR8 agonist, because they are not identical, failure for one would not necessarily mean failure for both" (Opp. 14).[8] But they cite no authority supporting their demand for more-detailed disclosures. *Singh v. Schikan*, which Plaintiffs chose not to address (*see* Mot. 12), is instructive. 106 F. Supp. 3d 439, 447 (S.D.N.Y. 2015). There, plaintiffs conceded that the Registration Statement adequately disclosed the "key details" regarding the company's Phase 2 and Phase 3 trials, including respective enrollment criteria, patient enrollments, and number of trial sites. *Id.* Plaintiffs argued, however, that the Registration Statement "should have highlighted these differences and should have disclosed the negative impact these differences would likely have on the study's findings and therefore on the drug's prospects." *Id.* The court rejected this omissions-based theory of falsity, holding that "defendants were not required to draw out such inferences or to make such forecasts in order to provide complete and accurate disclosures." *Id.* The SAC fares just as poorly by comparison to the two cases Plaintiffs rely on in their Opposition. In *Schueneman v. Arena Pharmaceuticals, Inc.* (Opp. 13), a study

---

[8] Defendants do not request judicial notice of the Stifel report for the truth of the matters asserted—*i.e.*, that SBT6290 would, in fact, "be significantly de-risked by SBT6050's clinical success." (Ex. U at 2.) The judicially noticeable fact is simply the analyst's statement, reflecting the market's understanding of Silverback's comprehensive disclosures.

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

5.

showing that the company's drug candidate "was causing mammary tumors, brain cancer, skin cancer, and nerve sheath cancer" in rats, prompting the FDA to request "bi-monthly reports and follow-up studies," which was "highly unusual" and "out-of-process." 840 F.3d 698, 701, 707 (9th Cir. 2016). Defendants nonetheless told investors that the drug's "long-term safety and efficacy" had been "demonstrated" in "long-term preclinical toxicity and carcinogenicity studies." *Id.* at 707. In *Boston Retirement System v. Uber Technologies, Inc.* (Opp. 13), the Registration Statement conveyed to investors that, "no matter what trouble Uber had faced in the past, [its new CEO] was leading the company down a new path." 2020 WL 4569486, at *6 (N.D. Cal. Aug. 7, 2020). But Uber continued "to launch in new markets in ways it knew were undoubtedly illegal" and "viewed paying fines for violating local laws, or bribes for avoiding those fines, as a cost of doing business." *Id.* The SAC alleges no facts even approaching the level of particularity in *Arena* or *Uber*.

**B.    Plaintiffs Do Not Plead a False or Misleading Statement During the Class Period.**

Plaintiffs' Section 10(b) claim calls to mind the purpose of the PSLRA's heightened pleading requirement: "to put an end to the practice of pleading fraud by hindsight." *Immune Response*, 375 F. Supp. 2d at 1016.[9] Their theory of fraud is just as rooted in hindsight as their theory of "negligence" under Section 11, and they fail to plead falsity for four reasons: First, the alleged omission of clinical data disclosure showing "disease progression" suffers from the same flaws as Plaintiffs' Section 11 arguments: a repackaged but equally speculative "open label" theory, and the faulty premise that evidence of "disease progression" would have rendered any of the challenged statements misleading when made. Second, Defendants' interpretations of the interim data are still non-actionable opinions. Third, there are no particularized factual allegations showing that data regarding "*severe* cytokine-related adverse events" existed at the time of any challenged statement. Fourth, Plaintiffs' insistence that Defendants spell out in even greater detail how similar

---

[9] Plaintiffs' argument that the SAC is not puzzle pled (Opp. 14–15) relies on cases that offer no support because they contain no substantive analysis of the pleadings. *See In re Acadia Pharma. Inc. Sec. Litig.*, 2020 WL 2838686, at *4 (S.D. Cal. June 1, 2020) (no explanation of how plaintiffs "single[d] out the actual statements" being challenged amongst "large block quotes"); *Uber Techs.*, 2020 WL 4569846, at *5 (same).

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**                                  6.
**Case No. 2:21-cv-01499-MJP**

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

SBT6290 was to SBT6050 fares no better under Section 10(b) than Section 11.

**"Disease Progression."** Plaintiffs' first argument is that Defendants "convince[d] investors" that observed changes in PK markers "meant early signs of efficacy" despite concealing data showing "disease progression." (Opp. 16.) Following the same script as their Section 11 claim, Plaintiffs allege omissions in Defendants' Class Period disclosures by working backward from the September 2021 Abstract and ESMO Presentation. But there are no *particularized* factual allegations showing that Defendants *knew of or recklessly disregarded* the omitted data *at the time* of the challenged statements. Indeed, their argument that Defendants "had access to data" showing "disease progression" before September depends entirely on two conclusory allegations: The first, that Defendants "had access to the open label trial data from day one" (Opp. 18), is no different from the "open label" allegations the Court already rejected (*see* Order 23–24). The second is just as conclusory, lacking even a CW allegation for support: that the Abstract and ESMO Presentation "reflect precisely what [ ] Defendants knew" as of the April 4 and August 1 data cutoff dates, respectively. (Opp. 17–18 & n.11.) But the *only* facts in the record from which Plaintiffs can launch this inferential leap are the data cutoff dates themselves. As explained above, the Abstract does not contain nearly enough detail to support Plaintiffs' retrospective guesswork. (*See* § II.A.2, *supra*.) More broadly, the Abstract and ESMO Presentation do not state *anything* about *when* the data was collected, cleaned, analyzed, or disclosed to Silverback (the trial sponsor)—much less what Defendants knew or could have known as of the data cutoff dates. Nor is there a CW, document, meeting, conference call, or any other factual allegation showing that Defendants "had access" to the data before the public disclosures.

If there were *any* support in the case law for Plaintiffs' speculative theory of falsity, they surely would've found it. The cases Plaintiffs cite offer no such support. In *Kendall v. Odenate Therapeutics, Inc.* (Opp. 16), which also involved an "open label" clinical trial, *five* CWs supported allegations that the defendants knew of specific reports from trial sites and doctors that patients were experiencing high rates of neutropenia. 2021 WL 3406271, at *2 (S.D. Cal. Aug. 4, 2021).

**DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

7.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

The CWs supported further allegations that defendants "held a teleconference call with the clinical site management team about the higher-than-expected neutropenia rates and related patient withdrawals" and "initiat[ed] an urgent 'all-hands-on-deck' program to lower the rate of patient withdrawals." *Id. Odenate* makes clear that it takes much more than an "open label" trial and conclusory allegations of "access to data" to plead falsity.[10] *See also In re Amgen Inc. Sec. Litig.*, 2014 WL 12585809, at *5 (C.D. Cal. Aug. 4, 2014) (among other particularized allegations, defendants attended a meeting during which they reviewed slides with clinical data showing "statistically significant increased risk of mortality . . . compared to placebo") (Opp. 19); *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (falsity premised on allegations from *four* CWs; defendants publicly stated that government contracts were merely in "backlog," without disclosing existence of stop-work orders) (Opp. 20).

Plaintiffs' only response is to complain that the public sources Defendants cited (Mot. 17) call into question their conclusory allegations (Opp. 17 n.12). This argument misconstrues the purpose of judicial notice in securities cases. *See In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) ("[*Orexigen*] does not prevent a defendant from using the doctrines of judicial notice or incorporation by reference to create factual disputes with a plaintiff's *conclusory* allegations."). Regardless, Silverback's Registration Statement is unquestionably incorporated by reference, and its disclosure of the Company's clinical-trial practices does not comport with Plaintiffs' hindsight-based theory. (*See* Ex. C at 30 (explaining that CROs managing Silverback's clinical studies, "as well as clinical investigators, and consultants play a significant role in the conduct of our . . . clinical trials ***and the subsequent collection and analysis of data***").)

Finally, even if the SAC adequately alleged that data showing "disease progression" was available to Defendants before the interim-data disclosures, Plaintiffs' theory relies on the same non-sequitur as their Section 11 claim. Namely, that investors would have been surprised to learn (or even viewed as material) that any number of patients with advanced, treatment-resistant cancer,

---

[10] The same is true of *CytRx*, 2017 WL 5643161 (*see* Mot. at 16), which Plaintiffs also ignore.

**DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

8.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

receiving an unproven experimental therapy in an early-stage clinical trial, had not gone into remission. In fact, if Plaintiffs cited the SVB Leerink analyst report as a proxy for investor sentiment (*see* Opp. 17–18), it reflects a very different the reaction to the interim data than Plaintiffs suggest.[11]

**Inactionable Opinions.** In their Opposition, Plaintiffs surprisingly argue alleged omissions from the September 2021 interim-data disclosures. (*See* Opp. 17–19.) Missing, however, from the Opposition *and the SAC*, is any description of the ***specific data*** Defendants allegedly concealed. Plaintiffs make vague references to "misstatements" and quote an analyst supposedly "[r]elying on the misstatements in the ESMO Presentation." (*Id.* at 17–18). But the report itself makes clear that the analyst relied on ***the data***—not Defendants' interpretations or conclusions—without any suggestion that the disclosure was incomplete or misleading. (*See* ¶ 91 ("We view ***the safety data*** and the ***biomarker data*** seen in the monotherapy arm to be positive . . . .").[12])

This leaves Plaintiffs where they started, simply disputing Defendants' opinions regarding the interim data. (*See* Mot. 19–20.) The Opposition confirms this by arguing that Defendants "*claim*[*ed*] 'Proof-of-mechanism established' and 'Early signals of anti-tumor activity in a heavily pre-treated heterogenous population,' and that 'SBT6050 conferred clinical benefit'"—statements that Plaintiffs admit were premised on "the hard data."[13] (*See* Opp. 18.) Plaintiffs insist that these statements are actionable because they were not expressly "couch[ed]" as opinions or beliefs. (*Id.*) But they identify no authority requiring any magic words, and the only cases they cite do not support their arguments. *See In re Allied Nev. Gold Corp. Sec. Litig.*, 743 F. App'x 887, 888 (9th Cir. 2018) (allegations from *multiple* CWs detailing defendants' knowledge of *specific* and *contemporaneous* information that directly undermined their stated opinions); *Amgen*, 2014 WL 12585809, at *16–

---

[11] Plaintiffs conspicuously chose not to attach the SVB Leerink analyst report to their Opposition, but it remains part of the record. (*See* Dkt. No. 37-6.) The report does not cite Defendants' statements (or anything else) as the basis for the analyst's comment regarding "investor expectations for eye-catching efficacy."

[12] Plaintiffs did not submit this report either, but it too remains part of the record and it reflects the analyst's *exclusive* reliance on the *data* reported in the ESMO presentation. (*See* Dkt. No. 37-7.)

[13] Even if Plaintiffs *had* alleged the omission of any specific data, it is not enough to allege that "an issuer knows, but fails to disclose, some fact cutting the other way, because reasonable investors understand that ***opinions sometimes rest on a weighing of competing facts***." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017).

**DEFENDANTS' REPLY I/S/O MOTION TO DISMISS SAC Case No. 2:21-cv-01499-MJP**

9.

17 (defendant's statement that results of clinical trial were "generalizable" to broader patient population was not interpretation of specific clinical data). Unlike *Amgen*, Plaintiffs challenge the conclusions and interpretations that Silverback publicized in the same disclosures as the underlying data. Those "publicly stated interpretations of the results of [ ] clinical studies" are inactionable opinions. *Leavitt v. Alnylam Pharmas., Inc.*, 451 F. Supp. 3d 176, 184 (D. Mass. 2020).[14]

**"Severe cytokine-related adverse events."** Plaintiffs start by asserting (correctly) that the ESMO Presentation—based on ***clinical data as of August 1***—concluded that "SBT6050 had a 'manageable safety profile,' with no DLTs, and detailing only minor adverse events," as well as "cytokine related adverse events" that resolved with supportive care. (*See* Opp. 20; *id.* at 7.) Plaintiffs then argue that "Defendants are not entitled to cherry pick trial data to disclose when doing so without complete transparency as to related data would mislead investors." (Opp. 20.) But Plaintiffs still do not identify *any* specific data omitted from the ESMO Presentation, and they skip over the most-significant news in Silverback's ***November*** 10-Q: After reiterating the safety data from the ESMO Presentation, Silverback disclosed that "Two patients were ***subsequently*** enrolled at a dose level of 0.45 mg/kg plus pembrolizumab," one of whom "experienced serious adverse events . . . following the first dose" that ultimately led to the patient's death. (¶ 94; Ex. P at 8.)

Plaintiffs do not even suggest that these events occurred *before* Silverback's interim-data disclosures—much less that Defendants omitted it from *any* prior disclosure.[15] And it defies reason to argue that Silverback's decision to terminate its oncology programs was based on "*no newly identified data*" post-dating the September ESMO Presentation. (Opp. 20–21 & n.19.) In fact, Silverback's March 2022 announcement confirms that the adverse events disclosed in November *were* a significant factor in its decision: "Further development was discontinued based on limited monotherapy anti-tumor activity and ***cytokine-related adverse events that limited the dose in***

---

[14] Plaintiffs again do not attempt to distinguish Defendants' authorities. (*See* Mot. 20, citing *Leavitt*, 451 F. Supp. 3d 176, and *Sanofi*, 87 F. Supp. 3d 510.)

[15] Plaintiffs argue that the ESMO Presentation also "discussed cytokine related adverse events" (*Id.* 21 n.18), but those did *not* include the two patients who "were ***subsequently*** enrolled at a dose level of 0.45 mg/kg plus pembrolizumab."

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

10.

*combination with pembrolizumab*." (Ex. R at 1; ¶ 98.[16])

**SBT6290.** Plaintiffs' arguments regarding the supposed concealment of SBT6290's imminent demise fail under Section 10(b) for the same reasons they fail under Section 11. (*See* § II.A.2, *supra*.) The extra level of detail that Plaintiffs demand is not required in the Offering Documents, *Singh*, 106 F. Supp. 3d at 447, nor in Defendants' Class-Period disclosures, *see Colyer v. AcelRx Pharmas., Inc.*, 2015 WL 7566809, at *6–7 (N.D. Cal. Nov. 25, 2015) (rejecting falsity allegations that defendants, despite accurately disclosing that medical device "eliminates the risk of IV-related analgesic gaps, . . . should have also disclosed [device]'s optical system error rate").

**C.    "Access to Data" and "Core Operations" Do Not Establish Scienter.**

Plaintiffs offer only two arguments in support of their attempt to plead scienter. But the SAC's allegations still do not support a strong inference that Defendants acted "intentionally or with deliberate recklessness." *AcelRx*, 2015 WL 7566809, at *11.

**"Access to Data."** Plaintiffs start by reiterating the conclusory and speculative allegations that Defendants *must have known* of the supposedly concealed data "no later than" the Abstract and ESMO data cutoffs. (Opp. 21–22.) This argument fails to establish a strong inference of scienter for the same reasons it fails to establish falsity under Section 10(b) or Section 11. Repeating the phrases "open label data" or "access to data" does not cure the SAC's failure to plead ***particularized*** factual allegations—as demonstrated by comparison to the cases Plaintiffs cite. *See Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 680 (9th Cir. 2005) (plaintiffs failed to plead scienter despite allegations that defendants monitored weekly order forecasts and prepared internal reports showing customer cancelations and deferrals orders) (Opp. 8); *Constr. Workers Pension Tr. Fund v. Genoptix, Inc.*, 2013 WL 12123841, at *4, *7 (S.D. Cal. Mar. 22, 2013) (plaintiffs adequately pleaded scienter based on allegations from *six* CWs who participated in conference calls with defendants and received same emails as defendants informing them of declining customer demand)

---

[16] Defendants obviously have not "abandon[ed]" (Opp. 19 n.15) the argument that Silverback's decision in March 2022 was based on the *entirety* of the preclinical and clinical data available at that time. (*See* Mot. 6–7, 21.)

**DEFENDANTS' REPLY I/S/O**
**MOTION TO DISMISS SAC**
**Case No. 2:21-cv-01499-MJP**

11.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

(Opp. 24); *Arena Pharmas.*, 840 F.3d at 701–02, 707–08 (strong inference of scienter where defendants participated in FDA meetings to discuss NHP study showing link between increased prolactin levels and cancer and prepared written report to FDA "that follow-up studies substantiated the connection between prolactin and the cancer").

**Core Operations.** "The Ninth Circuit has typically found *inadequate* complaints alleging that facts critical to a business's core operations . . . are so apparent that their knowledge may be attributed to the company and its key officers." *AcelRx*, 2015 WL 7566809, at *12. The SAC does not plead facts sufficient to invoke either of the two exceptions to this rule. *First*, Plaintiffs' arguments are not "buttressed with *detailed* and *specific* allegations about management's exposure to factual information within the company." *See id*. Plaintiffs recycle the same conclusory "open label" allegations (Opp. 23), falling far short of the particularity required by the case law. *Cf. Amgen*, 2014 WL 12585809, at *11. *Second*, and for the same reasons, the SAC does not plead with particularity that the alleged "falsity is patently obvious." *AcelRx*, 2015 WL 7566809, at *12.

**D.    Plaintiffs' Opposition Adds Nothing to Their Loss Causation Allegations.**

Plaintiffs do not even mention the Ninth Circuit's holding that loss causation is subject to the heightened pleading requirements of Rule 9(b). *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018). And the only case they cite not only predates *First Solar*, but also demonstrates the SAC's failure to adequately allege loss causation. *See Genoptix*, 2013 WL 12123841, at *8 (alleged corrective disclosures revealed *same* declines in customer demand previously concealed from investors). Here, Plaintiffs have not pleaded that any information disclosed by Silverback in September 2021 or March 2022 was available to Defendants and concealed from investors at the time of any previous challenged statement. (*See* Mot. 23–24.)

**E.    The SAC Does Not State a Claim for Control Person Liability.**

Because Plaintiffs' Section 11 and 10(b) claims fail, so do their Section 15 and 20(a) claims.

## III.    CONCLUSION

For these reasons, Defendants request that the Court dismiss the SAC with prejudice.

DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS SAC                    12.
Case No. 2:21-cv-01499-MJP

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700

Dated:  January 27, 2023

/s/Christopher B. Durbin

Christopher B. Durbin (WSBA No. 41159)
COOLEY LLP
1700 Seventh Avenue, Suite 1900
Seattle, WA  98101-1355
Tel.: (206) 452-8700
Fax: (206) 452-8800
Email: cdurbin@cooley.com

Koji F. Fukumura (*pro hac vice*)
COOLEY LLP
4401 Eastgate Mall
San Diego, CA  92121-1909
Tel.: (858) 550-6000
Fax: (858) 550-6420
Email: kfukumura@cooley.com

Attorneys for Defendants SILVERBACK
THERAPEUTICS, INC., LAURA L. SHAWVER, JONATHAN
PIAZZA, RUSS HAWKINSON, PETER THOMPSON, VICKIE
L. CAPPS, ROBERT HERSHBERG, SAQIB ISLAM,
ANDREW POWELL, JONATHAN ROOT, THILO
SCHROEDER, and SCOTT PLATSHON

DEFENDANTS' REPLY I/S/O
MOTION TO DISMISS SAC
Case No. 2:21-cv-01499-MJP

13.

COOLEY LLP
1700 SEVENTH AVE., SUITE 1900
SEATTLE, WA 98101-1355
(206) 452-8700